**Benjamin VINTON, Jr., Plaintiff,**

v.

**TRUSTBANK SAVINGS, F.S.B., Defendant.**

**Civ. A. No. 90–317 MMS.**

United States District Court, D. Delaware.

July 7, 1992.

Stephen W. Spence of Phillips, Goldman, Spence & Nolte, Wilmington, Del., for plaintiff; William D. Johnston, (former counsel) (argued), of Young, Conaway, Stargatt & Taylor, Wilmington, Del.

Peter J. Walsh and Charlene D. Davis of Bayard, Handelman & Murdoch, P.A., Wilmington, Del. (William L. Stauffer, Jr., R. Grant Decker, (argued), and Joni L. Gamble, of Stauffer & Abraham, Falls Church, Va., of counsel), for defendant.

OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This case stems from an action brought against a savings and loan association which failed while the case was pending. Defendant has moved to substitute parties and to dismiss for lack of subject matter jurisdiction. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For reasons which follow, the motion to substitute parties will be granted and the motion to dismiss will be denied upon condition that plaintiff timely advise the Court as to which of two jurisdictions his action should be transferred.

I. THE FACTS

This case arises out of eight loans made by defendant Trustbank Savings, FSB ("Trustbank Savings"), a federally chartered savings bank, whose principal place of business was Tyson's Corner, Virginia. Trustbank Savings extended the loans to companies or partnerships in which Vinton was involved with his partner, Peter Issel ("Issel"). The loans were made over a period from 1985 to 1989 and most were secured by real property located in Maryland. The total amount of these loans is

approximately $14,000,000. Each of the loans issued by Trustbank Savings were guaranteed by plaintiff Benjamin Vinton, Jr. ("Vinton").

Vinton filed a Complaint against Trustbank Savings on June 8, 1990.[1] Six counts of the seven-count Complaint seek monetary damages arising out of fraudulent inducement, negligent misrepresentation, breach of covenant of faith, and breach of fiduciary duty. The underlying gravamen of the six counts are that Trustbank Savings allegedly did not inform Vinton that his partner, Issel, was a convicted felon and was financially irresponsible and that had Trustbank Savings informed Vinton about Issel, Vinton would not have participated with Issel in the loan ventures. The seventh count seeks declaratory relief. In Count VII Vinton requests that the Trustbank Savings' loans be deemed unenforceable against Vinton because Trustbank Savings did not inform Vinton about Issel and because it did not properly administer the loans.

After Vinton filed his Complaint, the Director of the Office of Thrift Supervision ("OTS") appointed the Resolution Trust Corporation ("RTC" or "Corporation") as Receiver of Trustbank Savings. Upon its appointment on January 25, 1991, RTC took possession of all of the assets of Trustbank Savings and subsequently entered into a Purchase and Assumption Agreement with Trustbank Federal Savings Bank ("Trustbank Federal"), a newly chartered savings association, whereby Trustbank Federal purchased substantially all of the assets and assumed certain liabilities of Trustbank Savings. The potential liabilities arising from plaintiff's claims for damages, however, were not assumed by Trustbank Federal. The Director of the OTS took possession of Trustbank Federal and appointed RTC as Conservator of the new institution.

On November 27, 1991, RTC as Receiver for Trustbank Savings moved to dismiss

---

1. Vinton filed the complaint in state court and Trustbank Savings subsequently removed the case to this Court.

Counts I–VI of the Complaint for lack of subject matter jurisdiction and moved to substitute for Trustbank Savings RTC as Receiver for Trustbank Savings (as to Counts I–VI) and RTC as Conservator for Trustbank Federal (as to Count VII). Subsequently, on March 20, 1992, the Director of the OTS appointed RTC as Receiver of Trustbank Federal, to replace RTC Conservator for Trustbank Federal. Consequently, the pending motion to substitute as to Count VII that was filed initially by RTC as Conservator is now brought by RTC as Receiver of Trustbank Federal. Also, because RTC has now been appointed as Receiver of Trustbank Federal instead of Conservator, RTC as Receiver of Trustbank Federal joins in the motion to dismiss Count VII.

## II. MOTION TO SUBSTITUTE

■ RTC, in its capacity as Receiver of Trustbank Savings and in its capacity as Receiver of Trustbank Federal, pursuant to Fed.R.Civ.P. 25(c), seeks to substitute: (1) RTC as Receiver for Trustbank Savings in place of defendant Trustbank Savings with respect to plaintiff's damage claims (Counts I through VI); and (2) RTC as Receiver for Trustbank Federal in place of defendant Trustbank Savings with respect to plaintiff's declaratory relief claim (Count VII).

The gist of plaintiff's argument against permitting substitution is that until it can be determined that sufficient assets are held for the payment of Vinton's claims, any change in the parties should at most comprise adding RTC in its two receiver capacities rather than substituting RTC for Trustbank Savings.

Plaintiff contends that the principle underlying the former ratable distribution requirement of the National Bank Act, 12 U.S.C. § 94 ("NBA"), which formerly applied to the Federal Deposit Insurance Corporation ("FDIC") should govern this case. If the ratable distribution requirement were applicable, the Purchase and Assump-

tion Agreement entered into by RTC would have to reserve sufficient assets in the receivership to allow distribution to unassumed creditors.[2] However, this statute—which was construed to require that creditors of a failed institution be treated alike—was eliminated by the recently enacted Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). The cases cited by plaintiff have been effectively overruled by FIRREA on the very point relied upon by plaintiff.

With the enactment of § 1821(i)(2), Congress repealed former § 2(11)(d) of the FDIA, which subjected the FDIC to the ratable distribution requirements of the NBA, and thereby effectively overruled prior inconsistent judicial decisions. As amended by FIRREA, § 1821(i)(2) limits the FDIC's maximum liability to any person having a claim against the receiver or the failed institution for which the FDIC is acting as receiver to the amount the person would have received in a straight liquidation.

*Senior Unsecured Creditor's Committee v. FDIC,* 749 F.Supp. 758, 773 (N.D.Tex. 1990) (citations omitted). *See also MCorp v. Clarke,* 755 F.Supp. 1402, 1418 (N.D.Tex. 1991) (the passage of FIRREA Section 1821(i) effectively overruled the "ratable distribution" requirement of the NBA).

Plaintiff urges that FIRREA only has the effect of limiting RTC's maximum liability to the amount Vinton would have received in liquidation. *Senior Unsecured Creditor's Committee, supra,* at 773. Therefore, according to plaintiff, RTC was empowered to transfer Trustbank's assets in an amount reduced to take into account Vinton's damage claims. Plaintiff urges that because RTC has not assured plaintiff that it has done so, the motion to substitute should be denied.

Plaintiff, however, cites no case in which any court has denied a motion by RTC, or FDIC, to substitute as Receiver regarding claims against a failed financial institution. On the contrary, there are many cases

---

**2.** An unassumed creditor is a creditor whose claim is not assumed by the successor institu-

tion, here Trustbank Federal.

granting such substitution as a matter of course. *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991) (RTC–Receiver substituted as counter-claim defendant); *Resolution Trust Corp. v. Murray,* 935 F.2d 89, 91–93 (5th Cir.1991) (RTC–Receiver substituted as party defendant-in-reconvention); *Payne v. Sec. Sav. & Loan Ass'n, F.A.,* 924 F.2d 109 (7th Cir. 1991) (RTC–Receiver substituted for failed savings and loan association); *Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78 (5th Cir.1990) (FDIC proper party to defend under liability claims by borrower's even though borrower's notes assigned to other entity); *Everett N. Dobson & Sons v. Dictar Associates,* 764 F.Supp. 1 (D.Me.1991) (FDIC's motion to substitute for failed bank as real party in interest granted).

Plaintiff's argument is based on the novel theory that the authority of RTC to transfer the assets and liabilities of an insolvent institution is limited by a requirement that RTC reserve sufficient assets in RTC Receiver to pay plaintiff the amount of his alleged damage claim. However, no such restriction exists. Rather, FIRREA grants RTC very broad authority to transfer assets and liabilities, in the process of facilitating the efficient administration of the failed institution. In particular FIRREA provides that:

> (i) In General. The Corporation may, as conservator or receiver— ... (II) subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment or consent with respect to such transfer.

> (ii) Approval by appropriate Federal banking agency. No transfer described in clause (i)(II) may be made to another depository institution (other than a new bank or a bridge bank established pursuant to subsection (m)

or (n) of this section) without the approval of the appropriate Federal banking agency for such institution.

12 U.S.C. § 1821(d)(2)(G) (1988). This legislative directive belies plaintiff's suggestion that a trust must be imposed upon the assets held by RTC.

■ In addition, while the maximum liability language of Section 1821(i)(2) of FIRREA [3] *limits* the amount the RTC or FDIC may pay to a creditor, it does not guarantee payment of a creditor's alleged claims. The statute merely provides that a plaintiff may receive *no more than* a pro rata share of the liquidation value of the failed financial institution.

Finally, the case law does not support plaintiff's position. In *Payne, supra,* the Court of Appeals for the Seventh Circuit ruled, under similar circumstances, that RTC could be substituted for a failed financial institution even though that would effectively preclude the plaintiff from recovery. According to the Court of Appeals:

> As Receiver, RTC was the legal successor under FIRREA to 'all valid obligations of the insured depository institution.' 12 U.S.C. § 1821(d)(2)(H). The question, then, is whether in selling [the failed financial institution to the new financial institution], RTC passed along the ... liability which it had initially assumed. The answer is clearly no. FIRREA authorizes the RTC to organize thrift institutions which will 'take over such assets or such liabilities as [RTC] *may determine to be appropriate.*' *See* 12 U.S.C. § 1821(d)(2)(F)(i).

*Payne, supra,* at 111 (emphasis added in *Payne*).

The *Payne* court went on to assert that RTC retains the discretionary power to determine which assets and liabilities of a failed thrift it should sell and transfer, and which it should keep. *Id.* This is to facilitate the sale of the failed thrift's assets,

---

**3.** The pertinent portion of Section 1821(i)(2) provides:

> The maximum liability of the Corporation, acting as receiver or in any other capacity, to any person having a claim against the receiver or the insured depository institution for which such receiver is appointed shall equal

the amount such claimant would have received if the Corporation had liquidated the assets and liabilities of such institution without exercising the Corporation's authority under subsection (n) of this section or section 1823 of this title.

and to minimize the government's financial exposure, by permitting RTC to absorb liability itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations. *Id.* FIRREA would be frustrated if RTC could not be substituted for a failed thrift as a matter of course.[4]

FIRREA was recently amended to expressly provide for automatic substitution of RTC in actions in which RTC has been appointed Receiver.[5] The amendment provides as follows:

> (B) SUBSTITUTION—The Corporation shall be deemed substituted in any action, suit, or proceeding for a party upon the filing of a copy of the order appointing the Corporation as conservator or receiver for that party [or] the filing of such other pleading informing the court that the Corporation has been appointed conservator or receiver for such party.

12 U.S.C. § 1441a(*l*)(3)(B) (Supp.1991).

Defendant contends that substitution of RTC as Receiver of Trustbank Savings is governed by the amended provision because statutes changing procedural or jurisdictional rules are applied retroactively.[6] This Court need not reach the retroactivity issue, because even in the absence of a statutory mandate, RTC as receiver of Trustbank Savings should be substituted for Trustbank Savings under case precedent and because FIRREA authorizes RTC to transfer the assets and liabilities of a failed thrift as it deems appropriate.[7]

For the foregoing reasons, RTC's motion to substitute will be granted.

## III. MOTION TO DISMISS

### A. *The Issue*

■ Defendant has filed a motion to dismiss on the ground that FIRREA divests this Court of subject matter jurisdiction over Vinton's suit, which was pending at the time RTC was appointed as receiver for Trustbank Savings. Defendant focuses on the language of Section 1821(d)(6)(A) which states:

> the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or

---

4. See text *supra* pps. 1058–1059 for cases permitting substitution as a litigant of RTC for a failed thrift.

5. FIRREA was amended by enactment of the Resolution Trust Corporation Thrift Depositor Protected Reform Act of 1991, Pub.L. No. 102–233, §§ 301–318, 105 Stat. 1761 (Dec. 12, 1991).

6. To support its position, defendant cites *Reding v. FDIC*, 942 F.2d 1254, 1256 (8th Cir.1991) (citing *FDIC v. Kasal*, 913 F.2d 487, 493 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991), and *In Re Resolution Trust Corp.*, 888 F.2d 57, 58 (8th Cir.1989)) (applying FIRREA amendments retroactively). *See also Sikora v. American Can Co.*, 622 F.2d 1116, 1119 (3d Cir.1980) ("[M]odifications in procedural law are generally given effect in cases where the subject matter is restricted to events that occurred before the statutory enactment."); *United States v. Board of Education of City of Union City*, 697 F.Supp. 167, 171 (D.N.J.1988) (absent a contrary statutory directive, a new statute applies to cases pending on the date of its enactment unless manifest injustice would result). *But see Davis v. Omitowoju*, 883 F.2d 1155, 1170 (3d Cir.1989) (the general rule is that statutes apply only prospectively when application of the new law would affect rights or obli-

gations existing prior to the change in law); *Criger v. Becton*, 902 F.2d 1348, 1354 (8th Cir. 1990) (administrative regulations ordinarily not given retroactive effect).

The Supreme Court has not definitively resolved the retroactivity issue. In *Bradley v. Richmond School Bd.*, 416 U.S. 696 (1974), the Supreme Court held that intervening statutes can be applied retroactively. But in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Supreme Court ruled that congressional enactments do not have a retroactive effect unless their language requires it. In a more recent case, the Supreme Court acknowledged the two inconsistent lines of precedent, but refrained from reconciling the divergent principles. *Kaiser Aluminum & Chemical Corp. v. Borjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1989).

7. The amended statute, even if it were applicable, would only authorize automatic substitution of RTC for Trustbank Savings. The amended statute provides for the substitution of RTC *for a party*, so defendant could not rely on the statute to substitute RTC as receiver for Trustbank Federal because Trustbank Federal never was a party to the pending action.

territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A).

Defendant argues this language limits jurisdiction over a claim against a failed financial institution to the District Court for the District of Columbia or the District Court where the financial institution's principal place of business is located. In this case, the principal place of business is located in the Eastern District of Virginia.[8] However, Section 1821(d)(6)(A) also uses the term "continue" in connection with litigating a suit.[9] This implies that the suit should not be dismissed for lack of subject matter jurisdiction, because a case which is dismissed must be refiled; it cannot be continued. The issue, therefore, is whether FIRREA limits subject matter jurisdiction to the aforementioned courts. This is an issue of first impression.

### B. Position of the Parties

#### 1. Plaintiff's Argument

Plaintiff's argument that FIRREA in general, and Section 1821(d)(6)(A) in particular, does not divest this Court of jurisdiction over Vinton's first-filed claims rests largely on Section 1821(d)(5)(F) of FIRREA. That section reads:

**(i) Statute of Limitation Tolled**

For purposes of any applicable statute of limitations, the filing of a claim

with the receiver should constitute a commencement of an action.

**(ii) No prejudice to other actions**

Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

12 U.S.C. § 1821(d)(5)(F)(i) and (ii).[10]

Plaintiff focuses on Section 1821(d)(5)(F)(ii) to argue that no prejudice to the claimant in a first-filed complaint means the claimant has a right to "continue" a preexisting action in the jurisdiction where initially filed. The use of the term "continue," plaintiff argues, implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. The argument then goes on to urge that claimant could not continue an action over which the court had been deprived of subject matter jurisdiction. Rather, the claimant would have to refile such a lawsuit in another jurisdiction because the original suit would have to be dismissed due to lack of subject matter jurisdiction. Plaintiff concludes that because the statute uses the term continue, Congress must not have been contemplating the divestment of jurisdiction when it passed FIRREA.[11]

Plaintiff also relies on the opinion written by the District Court for the District of Utah in *Marc Development, Inc. v. FDIC*, 771 F.Supp. 1163 (D.Utah 1991). In *Marc Development*, plaintiffs alleged they had repaid loan obligations to a bank. They sought enforcement of the loan agreements and a declaration of clear title to, and reconveyance of, land securing the loans. *Id.* at 1164. After the action was filed, the

---

8. Def.Op.Br., Exh. A., Affidavit of Ruth Sweat.

9. The term "continue" in is used in a similar fashion in Section 1821(d)(5)(F)(ii). For the text of Section 1821(d)(5)(F), see text this page.

10. In turn, the referenced paragraph 12 provides:

    **(12) Suspension of legal actions**
    **(A) In general**
    After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—

    (i) 45 days, in the case of a conservator,
    (ii) 90 days, in the case of a receiver,
    in any judicial action or proceeding to which such institution is or becomes a party.
    **(B) Grant of stay by all courts required**
    Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties.
12 U.S.C. § 1821(d)(12).

11. The term "continue" is also used in a similar manner in Section 1821(d)(6)(A).

FDIC was appointed receiver for the bank and moved to stay the action on the ground that FIRREA requires a 180-day stay of pending actions during the administrative claims period pursuant to 12 U.S.C. § 1821(d)(13)(D).[12]

The issue in *Marc Development* was whether to grant the receiver's motion for a stay during the claims processing period, not the jurisdictional question posed in this case. Plaintiff, nevertheless, urges that the statutory analysis in *Marc Development* is compelling, if not controlling, with respect to the circumstances presented here.

The court in *Marc Development* determined that Congress only intended Section 1821(d)(13)(D) to emphasize that the FDIC is insulated from judicial review of its actions as a receiver or administrative claims processor. The court denied the FDIC's stay motion, holding that Section 1821(d)(13)(D) did not apply to lawsuits pending when the FDIC (or RTC) is appointed as receiver. *Id.* at 1168. The *Marc* holding is based on that court's interpretation of Section 1821(d)(5)(F)(ii). According to the *Marc* court, this section implies that a claimant who has a lawsuit pending at the time the receiver is appointed is entitled to pursue his administrative claims without interruption of his pending lawsuit during the administrative claims period. *Id.*

Plaintiff in the instant case urges that this interpretation of Section 1821(d)(5)(F)(ii) implies, by analogy, that this section also exempts a first-filed lawsuit from any jurisdictional limits of Section 1821(d)(6)(A) because the plaintiff is entitled to pursue his claim without interruption of the pending lawsuit.

### 2. *Defendant's Argument*

Defendant urges Section 1821(d)(6)(A) has divested this Court of jurisdiction. Plaintiff contends Section 1821(d)(6)(A) contains an express limitation of jurisdiction which applies regardless of the pendency of the plaintiff's action in this Court at the time of RTC's appointment as receiver.

In Section 1821(d)(6)(A), both the provision for filing suit on a claim and the parenthetical "(or continue an action commenced before appointment of the receiver)" precede and are qualified by the identification of the two districts where a particular claimant may file suit or continue an action.[13] Moreover, after the statute identifies the courts where claimant may file suit or continue an action commenced before appointment of a receiver, the statute reads "(and such court shall have jurisdiction to hear such claim)." Defendant argues that since the parenthetical "(or continue an action commenced before the appointment of the receiver)" appears before the apparent limitation of jurisdiction, Congress must have intended that a claimant could not continue an action in a court other than those identified.

Although there is scant case law addressing this particular jurisdictional issue, one case, in dicta, supports the position that suit cannot continue in the original jurisdiction. In a case which involved an action to stay proceedings while the plaintiff exhausted administrative remedies before RTC, the District Court for the Southern District of New York stated in *Gumowitz v. First Federal Savings and Loan Ass'n of Roanoke*, 1991 WL 84630 (S.D.N.Y.), that if a plaintiff chose to continue its suit, "venue" in the Southern District of New York would be improper because the only courts with jurisdiction over the action were the District Court for the District of Columbia or a District Court in Virginia,

---

**12.** Section 1821(d)(13)(D) provides:
 **(D) Limitation on judicial receiver**
  Except as otherwise provided in this subsection, no court shall have jurisdiction over—
  (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets

which the Corporation may acquire from itself as such receiver; or
  (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 12 U.S.C. § 1821(d)(13)(D).

**13.** *See* p. 10 for text of Section 1821(d)(6)(A).

where the defendant bank's principal place of business was located. *Id.* at 2–3 (citing 12 U.S.C. § 1821(d)(6)(A)).

Defendant responds to plaintiff's reliance upon Section 1821(d)(5)(F)(ii) by urging that section does not exempt pending cases from the jurisdictional restrictions of FIRREA. Rather, defendant argues, Sections 1821(d)(5)(F)(i) and (ii) merely prevent extinguishment of claims by the lapse of a statute of limitations during the claims administration process. Defendant contends that FIRREA's administrative claims procedure was enacted in response to the United States Supreme Court decision in *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).[14] *See Circle Industries v. City Fed. Sav. Bank*, 749 F.Supp. 447, 455 (E.D.N.Y.1990), *aff'd*, 931 F.2d 7 (2d Cir. 1991) (Congress drafted FIRREA to satisfy the *Coit* requirements of reasonable time and *de novo* review of administrative decisions).

The majority opinion in *Coit* held that if the regulations for administrative review only required claimants to give notice of their claims and wait for a reasonable period of time for FSLIC to review the claims before the claimants filed suit, such regulation would be a reasonable exercise of regulatory power and would be consistent with congressional intent. *Coit, supra,* 489 U.S. at 584, 109 S.Ct. at 1374. The Bank Board's regulations, however, did not establish a clear and reasonable time limit on FSLIC's review. *Id.* at 586, 109 S.Ct. at 1375.

In his concurring opinion, Justice Scalia did not join in part IV of the Court's opinion. He stated that part IV of the Court's opinion authorized the suspension of state law claims in any court until they had first been acted upon by FSLIC, or until a specific time limit for such action had elapsed. *Id.* at 588–89, 109 S.Ct. at 1376–77. Justice Scalia expressed a concern that during the period the plaintiff is required to exhaust administrative remedies, his claim may be extinguished by a statute of limitations.[15]

Defendant contends that Section 1821(d)(5)(F) is a legislative response to Justice Scalia's concern that claims may expire as a result of the lapse of a statute of limitations. Section 1821(d)(5)(F) is titled "Legal Effect of Filing." Section 1821(d)(5)(F)(ii) explicitly tolls the statute of limitations when a claim is filed with a receiver. Defendant argues, therefore, the first section deals with claims on which suit is filed after receivership and ensures that

**14.** The report of the House Banking, Finance and Urban Affairs Committee recommending passage of FIRREA states:

This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns with the FSLIC's current claims adjudication process as outlined by the Supreme Court in *Coit Independence Joint Venture v. FSLIC* [489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602] (March 21, 1988 [1989])....
The claims determination procedure set forth in subsection (1) creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.
H.R.Rept. No. 54(I), 101st Cong., 1st Sess. at 418–19 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15.

**15.** According to Justice Scalia:

It is, however, an understatement to say that what is involved is merely a 'suspension' of state-created rights. The suspension becomes an extinguishment if, during the period while the plaintiff is pursuing his required 'exhaustion' of federal remedies for his state claim, the state statute of limitations expires. To meet this difficulty, and thereby to make its pre-emption of state law seem less drastic, the Court imposes upon the Bank Board the requirement that its regulations 'place a clear and reasonable time limit on FSLIC's consideration of whether to pay, settle, or disallow claims.' *Ante,* at 586. Of course even this does not completely solve the problem. Even if the Bank Board establishes a flat 90–day limit, those state created claims whose statute of limitations happens to expire during that 90–day period will be extinguished. The only complete solution would be to require tolling of the state statute of limitations during the 90–day period—but this is so much more obviously a pre-emption of state law, and so difficult to conceal under the guise of 'exhaustion,' that the Court avoids it, leaving state claimants without remedy if their causes of action expire before federal 'exhaustion' has occurred.
*Id.* 489 U.S. at 589–90, 109 S.Ct. at 1377.

a statute of limitations will be tolled upon the filing of a claim with RTC.

According to the defendant, Section 1821(d)(5)(F)(ii) deals with claims on which suit has been filed prior to receivership. It ensures that a claimant will be able to pursue his cause even if the court where the action is proceeding is divested of jurisdiction during the administrative claims period or does not have jurisdiction because the action is pending in a district other than the District of Columbia or the district where the financial institution's principal place of business is located.

### C. Deficiencies in the Parties' Positions

#### 1. Plaintiff's Argument

Plaintiff's position fails to address the plain language of Section 1821(d)(6)(A) which expressly states that the appropriate court to hear this case is the District Court for the District of Columbia or the District Court of the defendant's principal place of business. One of the standard canons of statutory construction is that one starts with the language of the statute. *Kaiser Aluminum & Chem. Corp. v. Borjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). *See, also*, Posner, *Statutory Interpretation—In the Classroom and in the Courtroom*, 50 U.Chi. L.Rev., 800, 800 (1983) (statutory construction begins with the language of the statute); Frankfurter, *Some Reflections on the Reading of Statutes*, in 3 *Sutherland Stat. Const.* at 275 (4th ed. 1986) ("Though we may not end with the words in construing a disputed statute, one certainly begins there."). The plain language of Section 1821(d)(6)(A) imposes a heavy burden on plaintiff to demonstrate that the appropriate forums for the instant case are not limited to the District Court for the District of Columbia and the District Court for the Eastern District of Virginia.

The plaintiff's assertions based on the interpretation of Section 1821(d)(5)(F) in *Marc Development* are flawed because *Marc Development* has been discredited on this issue. In *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir.

1991), published subsequent to the date of decision in *Marc Development*, the Court of Appeals for the Tenth Circuit ruled on an issue similar to that in *Marc Development*, but in an opposite fashion. *Mustang Partners* involved an action commenced by a savings and loan association prior to receivership in which the defendant asserted counterclaims. The court held that notwithstanding the pendency of the lawsuit the counterclaims must be subjected to FIRREA's administrative procedures for adjudicating claims. In particular, the court rejected the defendant's reliance upon Section 1821(d)(5)(F)(ii):

> Again we are in agreement with the district court that this provision cannot be construed in any way to support Mustang's contention that its counterclaims survive its failure to comply with FIRREA's claim requirements. On the contrary, we conclude that Mustang's right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions. 12 U.S.C. § 1821(d)(6)(B).

*Mustang Partners*, 946 F.2d at 106.

Commenting upon *Marc Development* and *Mustang Partners*, the United States District Court for the Southern District of New York stated:

> *Marc Development* is contrary to the weight of authority. The District of Utah's decision in that case cannot be squared with the Tenth Circuit holding in *Resolution Trust Corp. v. Mustang Partners* .... It is unlikely that the district court in *Marc Development*, located within the Tenth Circuit, would have reached the same conclusion had it been aware of that court of appeals holding in *Mustang*.

*Homeyer v. Yorkville Fed. Sav. & Loan Ass'n*, 1991 WL 274226 (S.D.N.Y. Dec. 12, 1991), at p. 5 (citation omitted). In *Homeyer*, the district court also addressed the meaning of Section 1821(d)(5)(F)(ii). The court stated that this subsection cannot be used:

> to insulate pre-receivership creditors from any obligation to submit their claims to administrative evaluation....

Administrative processing must occur before the pre-receivership suit may 'continue.' A contrary construction would wreak havoc with a statute by which Congress clearly intended to submit all claims against failed banks and savings institutions to preliminary administrative evaluation by the federal agency charged with dealing with a problem of nationwide severity.

*Id.* at 5–6.

### 2. *Defendant's Argument*

Defendant's argument focuses on the plain language of Section 1821(d)(6)(A). The word "continue," however, is used in both Section 1821(d)(6)(A) and Section 1821(d)(5)(F). It is a standard canon of statutory construction that every word and clause must be given effect unless repugnant to the rest of the statute. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, in 3A *Sutherland Stat. Const.* at 208 (4th ed. 1986). This Court must therefore assess the implications of the use of the term "continue" in the statute. The use of the word "continue" means that Congress, when considering suits filed prior to the appointment of a receiver, intended to establish exclusive venue in the District Court for the District of Columbia or in the district where the principal place of business of the failed financial institution is located. Congress could not have intended the original forum to have been divested of subject matter jurisdiction by reason of adoption of Section 1821(d)(6)(A). If it were the statutory command to permit plaintiff to "continue," his lawsuit would be frustrated because a suit cannot be continued once it has been dismissed for lack of subject matter jurisdiction.

Moreover, the Court of Appeals for the Third Circuit has stated in dicta that jurisdiction is established at the time a complaint is filed. In a case which involved RTC and a stay request, the Court of Appeals stated:

The situation is slightly different, however, where a claimant files its action against a depository institution *before* the institution becomes insolvent and is placed in receivership. In that case, the failure of the thrift and the appointment of RTC as receiver would appear not to divest the federal court of jurisdiction, for '[i]t is a firmly established rule that subject matter jurisdiction is tested as of the time of filing of the complaint[.]'

*Praxis Properties v. Colonial Sav. Bank,* 947 F.2d 49, 63 n. 14 (3d Cir.1991) (citation omitted) (emphasis in original). Application of this principle to the instant case dictates that this Court is not divested of jurisdiction by FIRREA.

### D. *Section 1821(d)(6)(A) as a Venue Provision*

Use of the word "continue" in Section 1821(d)(6)(A) and Section 1821(d)(5)(F) is inconsistent with an interpretation of Section 1821(d)(6)(A) that exclusive jurisdiction in cases filed prior to the appointment of a receiver is conferred upon the District of Columbia and the District Court in the failed financial institution's principal place of business. However, the apparent contradiction in the wording of the statute can be harmonized if Section 1821(d)(6)(A) is viewed as a venue rather than a jurisdictional provision. Although FIRREA is not a model of clarity, I believe it is proper to interpret this provision as a special venue provision.

The anomaly of Section 1821(d)(6)(A) can be resolved if it is viewed as a venue provision. Under that construction venue is proper in the District Court for the District of Columbia and for the District Court for the Eastern District of Virginia. Viewed as a venue provision this Court is not divested of subject matter jurisdiction and, pursuant to the statute, can transfer the case to the appropriate forum, where the action can be continued.

Section 1821(d)(6)(A) states that the District Court for the District of Columbia and the District Court in the principal place of business of the failed financial institution "( ... shall have jurisdiction to hear such claim)." This use of imperative language implies that Section 1821(d)(6)(A) is a mandatory special venue provision. The United

States Supreme Court, in assessing another special venue statute, the former Section 94 of the NBA, held that the more ambiguous language " 'suits ... may be had' was, in every respect, appropriate language for the purpose of specifying the precise courts in which Congress consented to have national banks subject to suit and we believe Congress intended that in .those courts alone could a national bank be sued against its will." *Mercantile National Bank v. Langdeau*, 371 U.S. 555, 560, 83 S.Ct. 520, 523, 9 L.Ed.2d 523 (1962). *Accord, National Bank v. Associates of Obstetrics*, 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1975); *Michigan National Bank v. Robertson*, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1962).[16]

Moreover, the district of the failed financial institution's principal place of business would always have both jurisdiction and venue, so there is no reason for Congress to expressly assert that it "shall have jurisdiction" unless Congress meant to establish mandatory and, with the exception of the District of Columbia, exclusive venue. In addition, the same reasoning which led the Supreme Court to conclude the former Section 94 of the NBA was mandatory and exclusive applies here. In *Langdeau*, the Supreme Court reasoned it should:

> not lightly conclude that a congressional enactment has no purpose or function. We must strive to give appropriate meaning to each of the provisions of Title 12.... Appellee, however, would have us hold that any state court could entertain a suit against a national bank as long as state jurisdictional and venue

requirements were otherwise satisfied. Such a ruling, of course, would render altogether meaningless a congressional enactment permitting suit to be brought in the bank's home county. This we are unwilling to do...."

*Langdeau, supra*, 371 U.S. at 560, 83 S.Ct. at 523. Similarly, the congressional enactment of Section 1821(d)(6)(A), with its explicit use of the verb "shall," would be rendered meaningless if that provision was not interpreted as a mandatory venue provision. In that section, Congress specified the particular forums in which suits against failed financial institutions could be continued or initially brought against their will.

Section 1821(d)(6)(A) can also be understood as a provision which grants subject matter and personal jurisdiction to the District Court for the District of Columbia. Although the district in which the failed thrift's principal place of business is located would always have personal jurisdiction, the District Court for the District of Columbia would not necessarily have jurisdiction in the absence of an express statutory conferral of jurisdiction. Section 1821(d)(6)(A) provides that mandate.

This interpretation of Section 1821(d)(6)(A) is consistent with standard canons of statutory construction. According to one text:

> [I]n interpreting statutes, the demand for certainty and predictability requires an objective basis for interpretation which can be attained only (1) by a faithful reliance upon the natural or reasonable meanings of language; (2) by choosing

---

**16.** The former Section 94 reads:

Actions and proceedings against any association under this chapter may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any state; county or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

Former 12 U.S.C. § 94.

After its 1982 amendment, Section 94 of Title 12 now provides:

Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal De-

posit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located, or, in the event any State, county or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city in which that association's principal place of business is located.

12 U.S.C. § 94. The amended Section 94, which uses the verb "shall" that is also found in Section 1821(d)(6)(A), is interpreted as a mandatory venue statute. *See National Union Fire Ins. Co. v. Continental Illinois Corp.*, 640 F.Supp. 182, 183 (N.D.Ill.1986).

always a meaning that the text will sensibly bear by the fair use of language, and (3) by employing a thoroughly worked out but rational method of choosing among the several possible meanings.

deSloovére, *Textual Interpretation of Statutes*, in 2B *Sutherland Stat. Const.* at 316 (5th ed. 1992). Further, a reading of a statute should comport with the canon of construction *noscitur a sociis*, which instructs that a provision should not be viewed "in isolation but in light of the words that accompany it and give [it] meaning." *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989).[17] As the United States Supreme Court observed when construing the meaning of a term: "The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. O.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961).

One must understand the term "jurisdiction" by its companionship with the term "continue." Accordingly, this Court concludes that the language of Section 1821(d)(6)(A) specifies the forums in which a suit against a failed financial institution can be litigated, including a suit pending when RTC is appointed as receiver after suit has been filed. The limitation, however, appears not in the context of a jurisdictional limitation but rather in the context of a mandatory venue provision.

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction will be denied. However, plaintiff will not be permitted to remain in the Delaware District. Plaintiff has twenty days from the issuance of this opinion to file a pleading selecting either the District of Columbia or the Eastern District of Virginia as his choice of forum to which this Court should transfer this case so that plaintiff might continue his lawsuit. If there is a failure to timely select a forum, defendant may renew its motion to dismiss for want of venue.

---

**17.** *See also* Eskridge, *The New Textualism*, 37 UCLA L.Rev. 621, 621 (1990) ("[T]he meaning of a text critically depends upon its surrounding context.").