RESOLUTION TRUST CORPORATION, as Receiver for Columbia Banking Federal Savings & Loan Association and Resolution Trust Corporation, as Conservator for Columbia Banking Federal Savings Association, Plaintiff,

v.

J.F. ASSOCIATES, a New York General Partnership; Edward R. Feinberg; Rex S. Ruthman; Jerome Rosen; Catlyn & Derzee, Inc.; Kings Carpentry, Inc.; Gerrity Company, Incorporated; the Travelers Insurance Company; John Doe and Mary Doe, fictitious defendants intending to describe any and all tenants or occupants of the subject premises, Adams Station Commons, Inc., Defendants.

J.F. ASSOCIATES, INC.; Catlyn & Derzee, Inc.; and Adams Station Commons, Inc., Third Party Plaintiffs,

v.

TRIAD FUNDINGS, INC., Third Party Defendants.

No. 92–CV–1292.

United States District Court, N.D. New York.

Feb. 22, 1993.

Harter, Secrest & Emery, Rochester, NY for plaintiff; (Fred G. Athen, Jr., Maureen T. Alston, of counsel).

Edward R. Feinberg, Delmar, NY, for defendants and third party-plaintiffs J.F. Associates, Feinberg, Ruthman, Rosen, Catlyn & Derzee, Inc., Adams Station Commons, Inc.

Brekell, Couch, Law Firm, Albany, NY, for defendant Gerrity Co., Inc.; Mark W. Couch, of counsel.

## DECISION AND ORDER

McAVOY, District Judge.

On January 11, 1993, motions in the above captioned case were heard by the undersigned at a motion term in Albany, New York. In response thereto, the court issued a bench decision to all noticed motions except the plaintiff's cross-motion to dismiss defendant's counterclaims on which the court reserved decision. This Decision and Order disposes of this matter now.

## I. BACKGROUND

The facts of the underlying action will not be repeated in full and some familiarity is assumed. Rather, only those facts pertinent to the instant Decision and Order are explained.

This action was commenced pursuant to New York State law and subsequently removed to federal court by the now appointed receiver/plaintiff Resolution Trust Corporation (RTC). The litigation arises out of a financing agreement between Columbia Banking Federal Savings and Loan Association (Columbia) and the various defendants for the construction of "Adams Station," an apartment complex. When the defendants went into default under the financing agreement, Columbia undertook a foreclosure proceeding in state court. Therein Columbia obtained a state court order appointing a receiver for the Adams Station premises on or about May 20th, 1992.[1]

Defendants J.F. Associates, Catlyn & Derzee, Inc., and Adams Station Commons, Inc. served their Answer including counterclaims against Columbia on or about June 9, 1992. Sometime after the filing of the complaint, Columbia became insolvent and on June 11, 1992, the Federal Office of Thrift Supervision (OTS) closed Columbia and appointed RTC as Receiver and Conser-

vator for purposes of liquidation. *See* OTS Order No. 92–250 dated June 11, 1992 annexed as Exhibit A to Removal Petition. Thereafter, on or about June 23, 1992, defendants J.F. Associates, Catlyn & Derzee, Inc., Adams Station Commons, Inc., and Jerome Rosen served their Answer with counterclaims to plaintiff's First Amended Complaint.

Having received notice of RTC's appointment as receiver for Columbia, defendants filed a Proof of Claim with the RTC on or about September 14, 1992. On October 8th, 1992, a notice of substitution of RTC as a party plaintiff in the foreclosure action was filed in state court. Immediately thereafter, RTC filed a notice to remove the action to federal court. Plaintiff now seeks to dismiss the defendants' counterclaims on the grounds that this court lacks jurisdiction (Fed.R.Civ.P. 12(b)(1)) under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d).

## II. DISCUSSION

■ Not much under FIRREA is clear. This much the parties can agree on. However, through judicial interpretation of this labyrinthine statute it is clear to this court that "FIRREA makes participation in the administrative review process mandatory for all parties asserting claims against the failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1151 (1st. Cir.1992); *See RTC v. Elman*, 949 F.2d 624, 627 (2d Cir.1991); *RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991) (per curiam); *Meliezer v. RTC*, 952 F.2d 879, 882 (5th Cir.1992); *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3rd Cir.1991). "Accordingly, ... where a claimant has been properly notified of the appointment of a federal insurer as a receiver, 12 U.S.C. § 1821(d)(3)(B)–(C), and has nonetheless failed to initiate an administrative claim within the filing peri-

---

1. Defendants have challenged the appointment of this receiver and, pursuant to a Bench Decision of this Court on 1/11/93, this court will hold a hearing to determine whether such appointment comports with the federal receiver standard.

od, 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court. *See* 12 U.S.C. § 1821(d)(5)(C)(i)." *Marquis v. F.D.I.C.,* 965 F.2d at 1152.

However, there is no dispute in the instant case that defendants timely filed a claim with the appropriate administrative agency. Rather, the dispute concerns whether this court can adjudicate the matter during the pendency of the time-period accorded the administrative agency for review of the claim, and then, whether this court can adjudicate the matter after that time has elapsed.

The claim filed by the defendants with the RTC and the instant counterclaims seek satisfaction from the failed institution's assets. Because FIRREA mandates that the administrative agency must be given priority to review such claims for the first 180 days after its filing, plaintiff argues that until March 14, 1992, this court is without jurisdiction to pass upon the merits of the counterclaim. Further, the plaintiff argues that once the administrative review process has been exhausted, FIRREA allows defendants to seek judicial determination only in the District of Columbia or in the district court of the failed institution's principal place of business—here the Western District Of New York. *See* 12 U.S.C. § 1821(d)(6)(A).

In opposition, defendants argue that under the holding of *Marquis v. F.D.I.C.,* 965 F.2d 1148 (1st Cir.1992), and the policy reasons discussed therein, as well as under the equities of this case, dismissal should not be granted because: 1) the counterclaim arose prior to RTC's appointment as receiver for Columbia; 2) the defendants abided by the dictates of FIRREA and timely filed with the appropriate administrative agency; 3) the administrative agency has done nothing to date; and, 4) adjudication of this matter in two different district courts would be wasteful of judicial

resources and contrary to the public policy reasons underpinning the passage of FIRREA.

■ The court agrees with the general conclusions reached in the *Marquis* case. It would be wasteful indeed to dismiss the counterclaims to allow the administrative review process to be exhausted only to have the counter-claims brought as a separate action. As the First Circuit so eloquently explained, neither FIRREA nor common sense requires otherwise when the judicial claim pre-dates the appointment of RTC as receiver. *See generally, Marquis,* 965 F.2d 1148; *Simms v. Biondo,* 785 F.Supp. 322, 324–25 (E.D.N.Y.1992) (ordering pre-receivership claims against RTC stayed until the administrative process was complete). Consequently, the court finds that where a prereceiver action is removed to federal court, it is proper to stay adjudication to allow the administrative review process to continue. *See Marquis,* 965 F.2d at 1154; *Biondo,* 785 F.Supp. at 325.

■ However, the holdings of *Marquis* and *Biondo* are not dispositive of the instant matter. It is unclear from reading *Biondo* and *Marquis* (and the district court opinion from which the *Marquis* appeal was taken, *Marquis v. FDIC,* 779 F.Supp. 6 (D.N.H.1991)) whether those actions were brought in the district courts in which "the depository's principal place of business [was] located."[2] *See* 12 U.S.C. § 1821(d)(6)(A). If those actions were instituted in the district courts in which the failed depository institutions' principal places of business were located, then it is understandable why these courts did not embark on an analysis of whether § 1821(d)(6)(A) overrode each plaintiffs' choice of forum in the pre-receiver litigation. Nonetheless, in the instant case it is apparent that the counterclaims were asserted in an action commenced in a district *other than* the District of Columbia or in the "district within which the depository institution's principal place of business is

---

**2.** The district court opinion in *Marquis v. FDIC* indicates at footnote 1 that the Hillsborough Bank and Trust Company, (the original defendant in that action), was a "New Hampshire Bank." This, however, does not indicate where the Bank's principal place of business was located.

located." *See* Complaint, ¶ 1, attached to petition for removal (indicating that Columbia's principal place of business is located within the Western District of New York). Thus, this court must now determine whether the Northern District of New York will have subject matter jurisdiction over the counterclaims once the administrative review process is exhausted.

This analysis necessarily begins with a review of the two most pertinent statutory provisions of FIRREA—12 U.S.C. §§ 1821(d)(13)(D) & 1821(d)(6)(A). Under § 1821(d)(13)(D),[3] the jurisdictional capacity of the federal courts with regard to claims against the assets of failed depository institutions is barred except as expressly provided for in the various subsections of § 1821(d).

Section 1821(d)(6)(A) is one such grant of jurisdiction. Thereunder, the federal courts *are* given jurisdiction to adjudicate matters seeking assets from a failed depository institution once RTC is appointed receiver *provided* the dictates of § 1821(d)(6)(A) are complied with. Sub-section (d)(6)(A) provides:

**(6) Provision for agency review or judicial determination of claims**

**(A) In general**

Before the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) *or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the*

*district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia* (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A) (emphasis added).

A cursory reading of § 1821(d)(6)(A) appears to indicate that this jurisdiction is limited to one of two district courts—the District of Columbia or the district court in which the failed depository institution's principal place of business is located. Thus, the combination of § 1821(d)(13)(D) (barring jurisdiction) and § 1821(d)(6)(A) (expressing limited jurisdiction) seemingly precludes further analysis in the instant case. It would appear that because the Northern District of New York is not one of the two districts enumerated in (d)(6)(A), it is without jurisdiction to review matters post-administrative exhaustion.

However, the FIRREA statute is written in less than exact terms and numerous internal contradictions exist. *See generally Marquis*, 965 F.2d 1148. Because of the ambiguities of the wording of the statute and its internal inconsistencies, it is open to debate whether a court such as this one, which rightfully obtained jurisdiction upon removal, would be thereafter divested once the administrative review process is exhausted. To settle this debate, the court must closely scrutinize the wording of the statute and examine the context in which the provisions are located in an attempt to glean Congressional intent with regard to this jurisdictional question.

The court begins by scrutinizing the relevant language of FIRREA. *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985) ("It is axiomatic that '[t]he starting point in every case involving construction of a stat-

---

**3.** Section 1821(d)(13)(D) provides:

**D. Limitation on judicial review**

*Except as otherwise provided in this subsection, no court shall have jurisdiction over—*

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has

been appointed receiver, *including assets which the Corporation may acquire from it-self as such receiver;* or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).

ute is the language itself.' ") (quoting *Blue Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). Most particularly, the court looks to that sentence of § 1821(d)(6)(A) which addresses jurisdiction. This states that after exhaustion of the administrative review process a *"claimant may ... file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district ... within which the depository institution's principal place of business is located ...."* The question is whether the parenthetical phrase *"(or continue an action commenced before the appointment of a receiver )"* is an exception to the jurisdiction limitation of that sentence or simply an elaboration thereon.

When one reads the sentence without the parenthetical, the intent is clear. To institute a suit after appointment of a receiver and administrative exhaustion there are but two available forums—the D.C. district court or the district where the institution's principal place of business is located. But the parenthetical phrase is not so clear. It is written in specific language set off from the body of the sentence indicating that the content of the parenthetical is a separate idea—or in this case, a separate process—from the idea addressed in the body of the sentence. Further, the parenthetical phrase begins with a conjunction, indicating that the parenthetical process is an alternative to the process defined in the body of the sentence. *See Praxis Properties Inc. v. Colonial Sav. Bank, S.L.A.,* 947 F.2d 49, 63 (3rd Cir.1991) (listing *three* possible alternatives under § 1821(d)(6)(A) for review: 1) administrative appeal; 2) filing an action in the D.C. district or district of principal place of business; or, 3) continuation of a previous commenced judicial action).

Still further, Congress chose to the use the verb *"continue"* in this parenthetical at the exclusion of such verbs as *"recommence"* or *"refile."* Thus, the connotation is that Congress intended that *previously commenced actions* would "continue" without interruption whereas new actions would have to be instituted ·through "fil[ing]." This in turn leads to the conclusion that a previously instituted action would be "continued" without interruption of its jurisdiction. *See, e.g., Biondo,* 785 F.Supp. at 324; *Marc. Dev., Inc. v. FDIC,* 771 F.Supp. 1163, 1168–69 (D.Utah 1991) ("The term 'continue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction."); *see Marquis v. FDIC,* 965 F.2d at 1152–53 (interpreting near identical language in 12 U.S.C. § 1821(d)(5)(F)(ii)); *See also, United States v. Nunez,* 573 F.2d 769, 771 (2d Cir.) (identical terms within act construed to have same meaning when each term followed by identical language), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978).

And finally, without a proviso within this separately situated parenthetical limiting previously commenced actions to specific district courts, it is arguable that no such limitation exists on this separate and definable alternative.

When these factors are combined, it is clear that the parenthetical phrase represents a separate alternative process to that addressed in the body of the sentence which is unaffected by the conditional language following the parenthetical. Further, it is deducible that this process is one which is intended to be continued upon its original jurisdiction following administrative exhaustion and, unlike the other alternatives, need not be instituted anew. Thus, given the literal and grammatical construction of this sentence, jurisdiction is not limited solely to the two United States district courts listed in the body of the jurisdictional sentence of 12 U.S.C. § 1821(d)(6)(A). Rather, actions that are commenced prior to the appointment of a receiver maintain their original jurisdiction even after the exhaustion of the administrative review process.

■ Other standards of statutory construction support this conclusion. It is well established that an ambiguous clause within a statute must be interpreted to give meaning to all portions of that statute. *Montclair v. Ramsdell,* 107 U.S. 147, 152,

2 S.Ct. 391, 395, 27 L.Ed. 431 (1883). Here, when the jurisdictional sentence of (d)(6)(A) is given the limited construction RTC now proffers, other subsections within FIRREA become meaningless. In this vein, the *Marquis* court reasoned that the language of 1821(d)(5)(F)(ii) would become meaningless if previously commenced actions were dismissed in the face of administrative review. Section 1821(d)(5)(F)(ii) provides:

> **(5) Procedures for determination of claims**
>
> **(F) Legal effect of filing**
>
> (ii) No prejudice to other actions
>
> Subject to paragraph (12), *the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.*

12 U.S.C. § 1821(d)(5)(F)(ii) (emphasis added).

With reference to § 1821(d)(5)(F)(ii), the First Circuit asked rhetorically: "What could be more prejudicial to a claimant's right 'to continue' a pending action than the outright dismissal of the action?" 965 F.2d 1148, at 1153. The same question can be posited in this case.[4] Here, that rhetorical question takes on even more significance when it is considered that if the counter-claims are dismissed, a "new" judicial action premised upon the counterclaims would necessarily have to be instituted in a different district than the present one. The practical effect would be that two actions arising out of the same nucleus of operative facts, the former started by the party now represented by RTC and the future action instituted on the counterclaims, would proceed in tandem in two different courts. Such would be contrary to basic notions of judicial economy and the legislative purpose of FIRREA.[5] Rather, by reading the statute so as to maintain jurisdiction, the effect is that judicial resources are preserved, the litigants are spared the unnecessary costs of piecemeal litigation, and the matter is resolved in the most expeditious manner. This reading comports with the legislative purpose of FIRREA and therefore must be adopted. *See FDIC v. Tremaine,* 133 F.2d 827, 830 (2d Cir.1943) (L. Hand, J.) ("There is no surer guide in the interpretation of a statute then its purpose when that is sufficiently disclosed.").

In addition, there are other factors emanating from a contextual reading of FIRREA which supports the court's interpretation of (d)(6)(A). One is FIRREA's removal subsection. The basic grant of authority allowing the RTC to remove certain state actions is found at 12 U.S.C. § 1819(b)(2). This provides that:

> [T]he Corporation may, without bond or security, remove any action, suit, or proceeding from a State court *to the appropriate United States district court* before the end of the 90–day period beginning on the date the action ... is filed against the Corporation or the Corporation is substituted as a party.

12 U.S.C. § 1819(b)(2) (emphasis added).

While section 1819(b)(2) does not define what is *"the appropriate United States district court,"* Congress has answered the question in Section 1441a(*l*)(3) of Title 12 which is implicitly invoked through § 1819(b)(2). *See In re Meyerland Co.,* 960 F.2d 512, 521 (5th Cir.1992) (holding that

---

**4.** Admittedly, *Marquis* dealt with whether the district court should stay or dismiss that action pending administrative review and it is uncertain whether the *Marquis* lawsuit was in the district of that depository institution's principal place of business. Thus, the holding of *Marquis* is not directly on point to this analysis. Yet the reasoning of *Marquis* is compelling. The decision spoke in terms of a jurisdictional difference between actions filed prior to appointment of a receiver. In this vein, the *Marquis* court found that the subsections of FIRREA "show Congress' discernable intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver." 965 F.2d 1148, 1143. On this ground, the court finds it proper to apply the reasoning of *Marquis* to the instant dispute.

**5.** The policy behind the passage of FIRREA and its complicated procedure was "to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation." *Marquis,* 965 F.2d at 1152 citing H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., at 418–19, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86,214–15.

§ 1819(b)(2)(B) invokes 28 U.S.C. § 1441); *Woburn Five Cents Savings Bank v. Robert M. Hicks, Inc.*, 930 F.2d 965, 966 (1st Cir.1991) (same). In the recently amended section of 1441a(*l*)(3),[6] Congress granted the RTC the authority to remove all actions in which it is a party to one of three district courts: 1) the court where the action is pending; 2) the District of Columbia; or, 3) the court with jurisdiction over the principal place of business of the institution for which RTC was appointed receiver. 12 U.S.C. § 1441a(*l*)(3)(A).[7]

Clearly, Congress anticipated and intended that state court actions would and could be removed to the district court where the action was pending *even if that district was not one of the two denominated in § 1821(d)(2)(A).* And indeed, the RTC has recognized this power as it has argued in this case that removal was proper under *this amended statute.* It strains logic and reasoning to believe that Congress would allow actions to be removed to three possible courts if, as the RTC now asserts, adjudication could only be had in two of them. Such a reading would create another internal contradiction which, if given effect, would contravene the purpose of FIRREA by increasing expense and delaying adjudication.

Finally, the court turns to the few cases addressing this issue. Plaintiff has cited the court to two district court cases from the District of Maine, both decided by Chief Judge Carter. *See, FDIC v. Satter Cos.*, 791 F.Supp. 26 (D.Me.1992); *Perkins v. Farrah*, 791 F.Supp. 24 (D.Me.1992). While both cases address the issue now

before the court (indeed, *Satter Cos.* is directly on point) and both support RTC's contentions, defendants argue that both should be discounted because they were decided prior to the *Marquis* decision. Defendants impliedly assert that if Judge Carter were to decide the matter post-*Marquis*, he would resolve the matter differently. The court agrees and, presumably, so would Chief Judge Carter.

Shortly after the decision in *Marquis v. FDIC*, 965 F.2d 1148, Chief Judge Carter issued an opinion in the case of *Aliberti, Larochelle & Hodson v. First Meridian Group*, 795 F.Supp. 42 (D.Me.1992). Therein he held that "[t]he Court infers ... from *dicta* in *Serge Marquis* concerning the structure and purpose of FIRREA that dismissal of claims removed to this Court is not warranted on the grounds that the failed bank has its principal place of business in some other district." 795 F.Supp. 42, 44. Finding that the jurisdiction grant of authority for pre-receiver actions arises independently of FIRREA, the Maine district court reasoned that restrictions contained in FIRREA could not limit this authority. Accordingly, the Maine court stated in reference to the above examined sentence in § 1821(d)(6)(A) that "the language in subsection 1821(d) restricting the courts in which new suits on claims against the FDIC may be brought after exhaustion of the administrative process does not apply to the kind of case mentioned in the parenthetical, where jurisdiction is to be preserved." *Id.* at 45.

Plaintiff also cites to *Vinton v. Trustbank Sav., F.S.B.*, 798 F.Supp. 1055, 1064–

---

**6.** 12 U.S.C. section 1441a(*l*)(3) was amended effective February 1, 1992 by section 316 of the Resolution Trust Corporation Refinancing, Restructuring and Improvement act of 1991. 105 Stat. 1761, 1772 (1991).

**7.** The amended statute provides as follows:

(3) **Removal and remand.—**

(A) **In General.—**The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court *to the United States district court with jurisdiction over the place where the action, suit or proceeding is pending,* to the United States district court for the District of Columbia, or to the United States district court

with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution. The removal of any such suit or proceeding shall be instituted-

(i) not later than 90 days after the Corporation is substituted as a party, or

(ii) not later than 30 days after service on the Corporation, if the Corporation is named as a party in any capacity and if such suit is filed after August 9, 1989.

12 U.S.C. § 1441a(*l*)(3)(A) (emphasis added).

958

67 (D.Del.1992), which interprets § 1821(d)(6)(A) as a mandatory venue provision limiting it to the two district courts referenced in the body of the above-analyzed sentence. Although *Vinton* is a well reasoned opinion, this court declines to follow it as the court finds that the language of the pertinent sentence is jurisdictional in nature. Judge Schwartz should be commended for his attempt in *Vinton* to reconcile the many internal inconsistencies of FIRREA, but, for the above reasons, this court takes a different view.

III. CONCLUSION

Based upon the analysis proffered in *Marquis v. FDIC*, 965 F.2d 1148, the court finds that a stay of the instant matter is appropriate until March 14, 1993. Further, finding no reason other than the language of § 1821(d)(6)(A) to dismiss the instant counterclaims, and given the ambiguity associated with this section and the internal inconsistencies of FIRREA in general, the court finds that jurisdiction is maintained once the administrative review process has been exhausted. It is inconceivable to this court that Congress could have intended to give RTC the power to substitute into previously commenced private litigation only to sever out certain claims thereby necessitating separate litigation in another district court. An inconvenience of this magnitude is contrary to basic notions of judicial economy and antithetical to the policy upon which the FIRREA was founded. Consequently, it is hereby

ORDERED that the instant action is stayed until March 14, 1993, to allow time for the administrative review process to be exhausted; and it is further

ORDERED that plaintiff's motion to dismiss defendants' counterclaims is denied.

IT IS SO ORDERED.