HUDSON UNITED BANK as successor in interest to HUB National Bank formerly known as Meadowlands National Bank, Plaintiff,

v.

CHASE MANHATTAN BANK OF CONNECTICUT, NA, a nationally chartered banking association; Consolidated Asset Recovery Corporation, a Delaware Corporation; The Federal Deposit Insurance Corporation, in its corporate capacity; and the Federal Deposit Insurance Corporation, as receiver for Citytrust, Defendant.

Civ. No. 92–3515 (DRD).

United States District Court,
D. New Jersey.

Sept. 17, 1993.

Van Borkulo–Nuzzo & Mackiewicz, Richard W. Mackiewicz, Jr., Union City, NJ, for Plaintiff.

F.D.I.C., Washington, DC, Thomas A. Schulz, Loretta R. Pitt, Thomas L. Holzman, Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Stephen R. Farber, James T. Davis II, Roseland, NJ, for defendant F.D.I.C.

## OPINION

DEBEVOISE, District Judge.

Plaintiff Hudson United Bank [hereinafter Hudson] instituted this action seeking a declaratory judgment of its rights in certain funds transferred to it by Defendant Chase Manhattan Bank of Connecticut, NA [hereinafter Chase], and to recover punitive damages and litigation expenses against all of the Defendants. The Federal Deposit Insurance Corporation [hereinafter FDIC], as receiver for Citytrust of Connecticut [hereinafter Citytrust], now moves to transfer the action to Connecticut. This court has jurisdiction over Defendants Chase and Consolidated Asset Recovery Corporation [hereinafter CARC] pursuant to 28 U.S.C. § 1332, and over Defendant Federal Deposit Insurance Corporation in its receiver and corporate capacities [hereinafter the Receiver and the Corporation] pursuant to 12 U.S.C. § 1819(b)(2). For the reasons given below, the FDIC's motion to transfer is granted.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Hudson is a New Jersey Corporation and the successor-in-interest to HUB National Bank, formerly known as Meadowlands National Bank [hereinafter collectively Plaintiff]. All employees of Hudson with any knowledge of this matter are New Jersey residents. (Mackiewicz Cert. at ¶ 6.) Defendant Chase is a national association of the state of Connecticut with offices in Connecticut. Citytrust, now in receivership, was a state bank licensed in Connecticut. Kleinberg Electric, now in bankruptcy, is a New York corporation reorganizing in the Southern District of New York. (*Id.*, Ex. A, C.) Paul and Carol Kleinberg, guarantors on a loan at issue here from Citytrust to Kleinberg Electric, were both New Jersey residents at the time the loan was executed. (*Id.*, Ex. B.)

The source of the present controversy is an ill-fated loan from Plaintiff and a now-defunct bank, Citytrust, to a now-bankrupt company, Kleinberg Electric. The loan originated in 1987, when Citytrust extended a

$1.25 million line of credit and a $1 million term loan to Kleinberg Electric. Plaintiff purchased a 63% participation in the term loan from Citytrust pursuant to a Loan Participation Agreement, an asset that now amounts to 10% of Plaintiff's capital. Citytrust eventually failed and, in August of 1991, it was placed under the control of the Receiver.

As is typical in such cases, the Receiver immediately sought a buyer for Citytrust. The buyer proved to be Defendant Chase, and Chase, the Receiver, and the Corporation all entered into a Purchase and Assumption Agreement for Citytrust on August 9, 1991. (Hilton Decl. Ex. A.) Among its other provisions, this agreement contained the usual clauses allowing Chase to evaluate Citytrust's assets and "put" any unwanted assets back to the Receiver.

On the same date, the Corporation, the Receiver, Chase, and CARC entered into a Service Agreement by which CARC, a wholly-owned Chase subsidiary, was to manage the pool of Citytrust assets either retained by the Receiver or repurchased by the Receiver pursuant to the put provisions in the Purchase and Assumption Agreement. The Service Agreement appointed the Corporation to oversee CARC's management of the Citytrust asset pool.

The periodic payments that Plaintiff had been receiving for its participation in the term loan were early victims of this new arrangement. (Am.Compl. at ¶¶ 28, 30.) The Kleinberg line of credit was another early victim, apparently terminated at the closing of the Purchase and Assumption Agreement (Am.Compl. at ¶ 36). Two months after the closing, the Kleinberg loans changed hands once again when Chase determined that they were poor credit risks and put them back to the Receiver to be managed by CARC. (Hilton Decl., Ex. C.) According to the FDIC, the Receiver paid Chase for these loans using its own funds, not those of the Corporation. (Desandre Decl.)

In November of 1991, Plaintiff inquired as to the status of the term loan and was informed, for the first time, of Citytrust's demise. During the same period, CARC accelerated the Kleinberg loans and Kleinberg filed a voluntary petition under Chapter 11. (Am.Compl. at ¶¶ 39–40.) Kleinberg continued to make payments to CARC on its debts for the Citytrust loans, but CARC allegedly failed to pass the appropriate fraction of these payments on to Plaintiff. (Am.Compl. ¶¶ 41–44.)

Thus, by November of 1991, it had begun to appear unlikely that Plaintiff would ever recover its full interest in the Kleinberg loan participation. However, in March of 1992, Plaintiff's problems seemed to vanish. Chase allegedly transferred $476,176.80 to an account that Plaintiff maintained with Chase, and Plaintiff withdrew the amount as payment in full of the loan participation. (Compl. at ¶¶ 42–44; Chase's Ans. and Countercl. at ¶¶ 1–4.) But Plaintiff's problems reappeared when Chase decided that it had paid Plaintiff by mistake, and asked for its money back.

Plaintiff responded on August 19, 1992, with the instant complaint seeking a declaration of its rights to the $476,176.80, and Plaintiff filed its Amended Complaint on October 5. In Count One of the Amended Complaint, breach of the Participation Agreement, Plaintiff has alleged that Defendants failed in their duty to keep Plaintiff abreast of developments pertinent to its interests in the Kleinberg loan. In addition, Plaintiff has alleged that Defendants unlawfully precipitated Kleinberg's bankruptcy by unilaterally closing Kleinberg's line of credit, that Defendants negotiated a settlement of the term loan without Plaintiff's consent, and that Defendants caused Kleinberg to pay down the line of credit at the expense of the term loan.

In Count Two, breach of the duty of good faith, Plaintiff has alleged that Defendants owed it a duty of good faith because they occupied a position of trust and confidence with respect to Plaintiff. Defendants allegedly breached this duty by failing to advise Plaintiff of Citytrust's failure and the termination of Kleinberg's line of credit, and by acting out of self-interest to the detriment of Plaintiff.

In Count Three, breach of fiduciary duty, Plaintiff has largely reiterated the allegations of Count Two.

In Count Four, fraudulent concealment, Plaintiff has alleged that Defendants knowingly violated their Participation Agreement and common-law duties to advise it of the Citytrust failure, of Kleinberg's financial status and default on payments, and of the termination of Kleinberg's line of credit.

Chase answered Plaintiff's complaint on December 30, and counterclaimed for the return of the $476,176.80. The Receiver, CARC, and Plaintiff have now all answered the claims against them. The Corporation moved for summary judgment in lieu of an answer, but withdrew its motion when the parties agreed to a consent order dismissing Plaintiff's complaint against the Corporation without prejudice.

During this same period, Plaintiff sought advice from the Receiver as to whether administrative review was necessary before bringing suit. The Receiver forwarded a claim notice to Plaintiff in the spring of 1993, and Plaintiff filed its claim on April 15. In June, the Receiver denied Plaintiff's claim, and then moved for transfer to Connecticut.

Plaintiff filed a brief opposing the Receiver's motion, and CARC filed a brief "in further support" of the Receiver's motion. CARC's brief raised issues not addressed in the Receiver's moving papers, and so I ad-journed the motion hearing for two weeks for additional briefing.

## II. DISCUSSION

### A. The Receiver's Arguments: 28 U.S.C. § 1406(a)

The Receiver moves for transfer pursuant to 28 U.S.C. 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The Receiver argues that New Jersey is the wrong district for this case under two different federal statutes: the National Banks Act [hereinafter NBA], 12 U.S.C. § 94, and the Federal Deposit Insurance Act as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 [hereinafter FIRREA], 12 U.S.C. § 1821(d)(6)(A). Since I conclude that New Jersey is the wrong district under section 1821(d)(6)(A) of FIRREA, I will not address the forum provisions of the NBA.[1]

Paragraph (6)(A) of section 1821(d), the second "venue"[2] provision invoked by the Receiver, establishes certain procedures for filing suit on a claim involving failed depository institutions, and for seeking review of a

---

1. The forum provisions of the NBA are found in section 94, entitled "Venue of suits." Section 94 states that:

   Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located....

   12 U.S.C. § 94.

   This provision appears inapplicable here. By its terms, it applies only to national banking associations, and Citytrust was a bank chartered under the laws of Connecticut. However, FIRREA permits the FDIC to appoint itself as the Receiver of state institutions as well as federal ones. See 12 U.S.C. § 1821(c)(4). Once the FDIC has appointed itself Receiver for a state depository institution, the state institution is effectively "federalized" in that it is treated as a federal institution. 12 U.S.C. § 1821(c)(9). Ac-cordingly, even a failed state bank might be within the NBA venue provisions if the FDIC appointed itself Receiver before the plaintiff filed suit. Cf. Hill v. Equitable Trust Co., 562 F.Supp. 1324, 1332 (D.Del.1983) (section 94 does not apply if the failed bank was a state bank when the cause of action accrued and the case began).

2. Some courts have held that paragraph (6)(A) is a grant of jurisdiction rather than a specification of venue. See, e.g., Resolution Trust Corp. v. J.F. Assoc., 813 F.Supp. 951, 954 (N.D.N.Y.1993) (jurisdiction); Mansolillo v. F.D.I.C., 804 F.Supp. 426, 428 (D.R.I.1992) (jurisdiction); cf. Vinton v. Trustbank Sav., F.S.B., 798 F.Supp. 1055, 1065–67 (D.Del.1992) (venue). I need not address this issue, because transfer is the appropriate remedy for a failure to comply with paragraph (6)(A) regardless of whether it grants jurisdiction or specifies venue. See 28 U.S.C. § 1631 (if "there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action....").

prior administrative determination of that claim:

Before the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim ... or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia....

12 U.S.C. § 1821(d)(6)(A).

Plaintiff argues that this paragraph is inapplicable here because, construed literally, it applies only to claims "against a depository institution for which the Corporation is a receiver." That is, it applies only to claims against Citytrust, and not to claims against the Receiver itself. If Plaintiff's argument is correct, then the Receiver cannot invoke paragraph (6)(A) as a ground for transferring this complaint to Connecticut.

As support for its argument, Plaintiff cites the Third Circuit's recent opinion in *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). In *Rosa*, the court construed similar language in a different paragraph of section 1821(d), paragraph (13)(D). Paragraph (13)(D) bars suits against the depository institution and the Receiver until the plaintiff has exhausted the other procedures outlined in section 1821(d).

Except as otherwise provided in this paragraph, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The Third Circuit construed this jurisdictional bar literally, finding that it encompassed only those parties expressly named in the paragraph. For example, the Third Circuit refused to apply the bar to (i) the Resolution Trust Corporation [hereinafter RTC] in its corporate capacity; (ii) an institution for which the RTC was a conservator, not a receiver; and (iii) the RTC as conservator.

Plaintiff contends that its argument here is similar to that of the Third Circuit in *Rosa*. In essence, Plaintiff contends that if I read paragraph (6)(A) as literally as the Third Circuit read paragraph (13)(D), then I must conclude that paragraph (6)(A) does not cover suits against the Receiver. This argument is persuasive. Paragraph (6)(A) refers only to depository institutions; paragraph (13)(D)(i) also refers only to depository institutions; and paragraph (13)(D)(ii) refers to both depository institutions and to the Receiver. From this, it would appear that each paragraph should apply only to those entities that it names. If this reading of these paragraphs is correct, then Plaintiff is also correct and paragraph (6)(A) is irrelevant to claims against the Receiver.

Plaintiff's literal argument seems consistent with *Rosa* and with the language of paragraph (6)(A), but, as one court has remarked, "[n]ot much under FIRREA is clear." *Resolution Trust Corp. v. J.F. Assoc.*, 813 F.Supp. 951, 952 (N.D.N.Y.1993). A closer look at section 1821 and FIRREA yields a second textual argument favoring the opposite result, a result more in line with the purposes of FIRREA.

A good starting point for this analysis is paragraph (5), the paragraph that outlines the administrative claims procedures of FIRREA. *See Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 62–64 (3d Cir. 1991) (reviewing FIRREA's administrative claims procedures). The primary purpose of paragraphs (5) and (13)(D) is to force plain-

tiffs with claims against failed depository institutions to file the claims under FIRREA's administrative claims procedures before filing them in federal court. *See* H.R. REP. No. 101–54(I), 101st Cong., 1st Sess. 418–19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15.

For present purposes, the key feature of paragraph (5) is that it only mentions claims against depository institutions. This paragraph begins as follows:

> (5) Procedures for determination of claims
>
> > (A) Determination period
> >
> > > (i) In general
> > >
> > > Before the end of the 180–day period beginning on the date *any claim against a depository institution* is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

12 U.S.C. § 1821(d)(5)(A)(i) (emphasis added). The remainder of the paragraph (5) outlines the procedures for processing, allowing, and disallowing the claims filed under clause (i), and the legal effect of those claims.

The paragraph invoked by the Receiver, paragraph (6)(A), defines the claims to which it applies by expressly referencing and quoting paragraph (5)(A)(i). Thus, both paragraphs apply to identical sorts of claims—"any claim against a depository institution" for which the FDIC is the Receiver. 12 U.S.C. §§ 1821(d)(6)(A)(i), 1821(d)(5)(A)(i). If I were to read these paragraphs literally, as advocated by Plaintiff, I would have to exempt claims against the Receiver not only from paragraph (6)(A), but also from administrative review under paragraph (5). As far as I can discover, no court has ever adopted this literal reading of paragraph (5). Courts routinely treat claims against the Receiver, even those filed after the Receiver has taken control of a failed institution, as claims within the scope of paragraph (5). *See, e.g., Althouse v. Resolution Trust Corp.*, 969 F.2d 1544 (3d Cir.1992); *Praxis Properties*, 947 F.2d 49; *Rosa*, 938 F.2d 383; *Mansolillo*, 804 F.Supp. 426.

To understand why claims against the Receiver must be within the scope of paragraph (5) (and hence paragraph (6)(A)), it is necessary to look beyond paragraph (5) to the jurisdictional bar of paragraph (13)(D). As quoted above, this bar extends to claims against the Receiver as well as to those against the depository institution. Logic dictates that the claims barred by paragraph (13)(D) must coincide with those that may be filed under the administrative procedures of paragraph (5). Otherwise, paragraphs (5) and (13)(D) would bar relief in the district court without providing relief elsewhere, and FIRREA would become a source of immunity for the Receiver. This is not a result intended by Congress. Congress intended for FIRREA to channel claims through the administrative process, *Rosa*, 938 F.2d at 396, not to immunize the Receiver.

Indeed, the Third Circuit acknowledged in *Rosa* that the scopes of paragraphs (5) and (13)(D) must coincide. The *Rosa* court found that at least some of the relief sought by the plaintiffs was unavailable under the claims procedures of paragraph (5). Accordingly, the *Rosa* court reasoned that the relief must also be outside the bar of paragraph (13)(D)(ii): "we do not believe that clause (ii) encompasses claims that are not susceptible of resolution through the claims procedure." *Id.* at 394. The *Rosa* court's method of analysis was similar to mine: it determined the scope of one aspect of the claims process by examining the scope of another.

Given that at least some claims against the Receiver are within the scope of paragraphs (5) and (13)(D), the final step of the analysis is to examine whether these claims include Plaintiff's claims here. Paragraph (13)(D) covers "any claim relating to any act or omission of such institution or the Corporation as receiver," 12 U.S.C. § 1821(d)(13)(D)(ii), language which is certainly broad enough to cover all of Plaintiff's claims against the Receiver. The Third Circuit has limited the scope of this language to conform with the scope of paragraph (5), but this limitation does not exclude Plaintiff's claims here. For example, Plaintiff has alleged that the Receiver breached its fiduciary duties, and the Third Circuit recognized in *Rosa* that similar claims were within the scope of paragraphs (5) and (13)(D). *Rosa*,

938 F.2d at 394–95; *see also Resolution Trust Corp. v. Youngblood,* 807 F.Supp. 765 (N.D.Ga.1992) (counterclaims and affirmative defenses against RTC alleging intentional infliction of emotional distress, failure to follow standard practices, and a duty to indemnify are all within paragraphs (5) and (13)(D)); *Resolution Trust Corp. v. Wayne Coliseum Ltd,* 793 F.Supp. 900 (D.Minn.1992) (counterclaims for breach of contract and breach of the covenant of good faith and fair dealing are within paragraphs (5) and (13)(D)).

To summarize, I conclude that the forum provisions of paragraph (6)(A) apply to Plaintiff's claims because (i) the claims referred to in paragraph (6)(A) are coextensive with those in paragraph (5), the administrative claims procedure; (ii) the claims in paragraph (5) are coextensive with those in paragraph (13)(D), the jurisdictional bar; and (iii) paragraph (13)(D) covers Plaintiffs' claims against the receiver. This conclusion is consistent the conclusions of other courts that have addressed similar issues. *See Mansolillo,* 804 F.Supp. 426 (applying paragraph (6)(A) to claims against the Receiver for refusing to honor agreement for construction financing); *TPO Inc. v. F.D.I.C.,* 325 F.Supp. 663 (S.D.N.Y.1971) (applying 12 U.S.C. § 94 to claims against the Receiver); *cf. Resolution Trust Corp.,* 813 F.Supp. at 955 (refusing to apply paragraph (6)(A) because plaintiff commenced action before the RTC was appointed Receiver).

This conclusion is also consistent with the purpose of FIRREA's administrative claims procedures. Congress' primary goal in drafting these procedures was efficiency: "to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." *Rosa,* 938 F.2d at 396. Congress' concerns with efficiency did not stop with the claims procedures themselves. Congress also expedited the prompt resolution of lawsuits involving failed institutions by directing that the lawsuits be filed in only two locations: the institution's principal place of business or the District of Columbia. 12 U.S.C. § 1821(d)(6)(A). Without this forum clause, the FDIC would be "forced to defend actions at various locations throughout the country, with the attendant disruption of the Bank's records and personnel, [and] the defendant's task would become further complicated." *TPO Inc.,* 325 F.Supp. at 665.

Accordingly, I find that Plaintiff has improperly brought this action in the District of New Jersey. The appropriate fora are the District of Columbia or Connecticut, Citytrust's principal place of business. In the interests of justice, 28 U.S.C. § 1406(a), I shall grant the Receiver's motion to transfer this action to the District of Connecticut.

### B. CARC'S Arguments: 28 U.S.C. § 1404(a)

CARC, in a brief "in further support" of the Receiver's motion, suggests that transfer is appropriate under 28 U.S.C. § 1404(a). Section 1404(a) permits a district court to transfer a case to any other district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice...." 28 U.S.C. § 1404(a).[3] The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960)); *see also American Tel. & Tel. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1305 (D.N.J. 1990).

The statute itself identifies three factors that a court should weigh when transferring a case: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Sandvik, Inc. v. Continental Ins. Co.,* 724 F.Supp. 303, 306 (D.N.J.1989); *Derry Finance N.V. v. Christiana Cos.,* 555 F.Supp. 1043, 1045 (D.Del. 1983). In addition, a court should also consider its own convenience when weighing the

---

**3.** Section 1404(a) states that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

advisability of transfer. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) [hereinafter *Lony I* ].

■ These various factors can be grouped into two broad categories: public interests and private interests.[4] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The private interests include the plaintiff's choice of forum, the ease of access to sources of proof, the availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, the obstacles to a fair trial, and the possibility of a jury view of the premises. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The public interests include easing court congestion and other administrative difficulties, placing the burdens of jury duty on those with the closest ties to the action, resolving issues within the communities most affected by those issues, and trying issues before judges familiar with the applicable law. *Id.* at 508–09, 67 S.Ct. at 843; *Sandvik*, 724 F.Supp. at 307.

■ The party moving for transfer not only has the burden of coming forward, but also the burden of persuasion. *Lony v. E.I. Du Pont De Nemours & Co.*, 935 F.2d 604, 609 (3d Cir.1991) [hereinafter *Lony II* ]. Thus, unlike jurisdiction, a plaintiff's choice of venue benefits from a presumption of correctness. Accordingly, the moving party must establish that its alternative forum is not only adequate, but more convenient than the present forum. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988). Indeed, "unless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed." *Hardaway Constr., Inc. v. Conesco Indus., Ltd.*, 583 F.Supp. 617, 620 (D.N.J.1983); *see also Lony II*, 935 F.2d at 609; *Lacey*, 862 F.2d at 44.

■ In balancing the factors weighing for and against transfer, a "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that transfer to another venue is appropriate. *Id.* at 39. Among the

considerations are whether the moving party submitted adequate data of record to facilitate the appropriate analysis, *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973), whether the moving party has met its burden of persuasion, whether the contentions of the plaintiff were adequately considered and whether the relevant private and public interests were both adequately considered and balanced. *Lacey*, 862 F.2d at 39.

In the present case, it appears that transfer to Connecticut might be appropriate under section 1404(a). The alleged wrongdoing was committed in Connecticut by CARC (a Connecticut firm), Chase (a Connecticut-based association), and the FDIC as receiver of a Connecticut bank. Of course, Plaintiff resides in New Jersey, but virtually every document and witness related to Defendants' wrongdoing appears to reside in Connecticut.

However, neither CARC nor the Receiver has submitted materials of record that I can use to evaluate their motion. The record contains no competent evidence as to which witnesses are in Connecticut, which documents are in Connecticut, or what sort of inconveniences a New Jersey trial might cause. Accordingly, I find that section 1404(a) does not provide an alternative ground for transferring this action to Connecticut.

## III. CONCLUSIONS

I shall grant the Receiver's motion to transfer for improper venue pursuant to 28 U.S.C. § 1406(a). An appropriate order shall issue.

---

4. Although the *Gulf Oil* case involved a motion to dismiss for *forum non conveniens* rather than a motion to transfer under section 1404(a), courts routinely evaluate the *Gulf Oil* factors when resolving motions under section 1404(a). *See*

*Sandvik*, 724 F.Supp. at 308 n. 8. Significantly, a federal court has more discretion under section 1404(a) than under the doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 346, 99 L.Ed. 789 (1955).