

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1994

# Hudson v. Chase Manhattan

Precedential or Non-Precedential:

Docket 93-5279

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Hudson v. Chase Manhattan" (1994). *1994 Decisions.* Paper 231.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/231

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-5729

_____


HUDSON UNITED BANK, as successor in interest
to HUB National Bank, formerly known as
Meadowlands National Bank,
                                    Appellant

v.

CHASE MANHATTAN BANK OF CONNECTICUT, N.A.;
CONSOLIDATED ASSET RECOVERY CORPORATION;
FEDERAL DEPOSIT INSURANCE CORPORATION,
in its corporate capacity;
FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Citytrust

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 92-cv-03515)
_____


Argued July 20, 1994

Before:  SCIRICA, LEWIS and SEITZ, Circuit Judges

(Filed December 29, 1994)


RICHARD W. MACKIEWICZ, JR., ESQUIRE (Argued)
Van Borkulo-Nuzzo & Mackiewicz
3100 Bergenline Avenue
Union City, New Jersey 07087

   Attorney for Appellant

COLLEEN B. BOMBARDIER, ESQUIRE (Argued)
LAWRENCE H. RICHMOND, ESQUIRE
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

JAMES T. DAVIS, II, ESQUIRE
STEPHEN R. FARBER, ESQUIRE
Brach, Eichler, Rosenberg, Silver,
Bernstein, Hammer & Gladstone
101 Eisenhower Parkway
Roseland, New Jersey 07068

  Attorneys for Appellee
  Federal Deposit Insurance Corporation,
  as Receiver for Citytrust


SHERYL L. NEWMAN, ESQUIRE
McManimon & Scotland
One Gateway Center, Suite 1800
Newark, New Jersey 07102-5311

  Attorney for Appellee
  Consolidated Asset Recovery Corporation


GERALD T. FORD, ESQUIRE
SIFF ROSEN, ESQUIRE
One Gateway Center, Suite 500
Newark, New Jersey 07102-5311

  Attorneys for Appellee
  Chase Manhattan Bank of Connecticut, N.A.

_____

OPINION OF THE COURT
_____


SCIRICA, <u>Circuit</u> <u>Judge</u>.

     There are two interrelated issues in this appeal. First, whether the venue provision of the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12

U.S.C. § 1821(d)(6)(A) (Supp. II 1990),[1] governs only actions brought against the failed depository institution or whether it also applies to actions against the institution's receiver. Second, whether the claims procedures established in FIRREA, 12 U.S.C. § 1821(d), cover actions against the receiver as well as actions against the failed institution.

This case arises out of the failure of a state bank, Citytrust of Connecticut. Hudson United Bank brought suit in the United States District Court for the District of New Jersey against Chase Manhattan Bank of Connecticut, the Federal Deposit Insurance Corporation, and Chase's wholly owned subsidiary, Consolidated Asset Recovery Corporation, seeking a declaratory judgment of its rights to certain funds as a result of its participation interest in loans made by the failed bank. The Federal Deposit Insurance Corporation, as receiver for the failed bank, moved to transfer the action to the District of Connecticut under 12 U.S.C. § 1821(d)(6)(A). The district court granted the motion to transfer, holding that the claims procedures applied to actions against the receiver and that a change of venue was required under FIRREA. The court then certified the issue for interlocutory appeal. Hudson United Bank v. Chase Manhattan Bank, NA, 832 F. Supp. 881 (D.N.J.

---

[1]. FIRREA, Pub. L. No. 101-73, 103 Stat. 183 (1989) (appears in various sections of the United States Code). The current version of § 1821(d) appears in 12 U.S.C. § 1821(d) (Supp. V 1993), but there have been no material changes in the parts relevant to this dispute. Unless otherwise noted, citations to 12 U.S.C. § 1821 will be to the 1990 version.

1993).  We will affirm.

                                    I.

        Plaintiff/appellant Hudson United Bank ("Hudson") is a
New Jersey corporation.[2]  Defendant/appellee Chase Manhattan Bank
of Connecticut, NA ("Chase"), is a national association of the
state of Connecticut, with offices in Connecticut.  Citytrust of
Connecticut ("Citytrust"), the failed bank now in receivership,
was a state bank licensed in Connecticut.  Kleinberg Electric is
a New York corporation that was a customer of Citytrust and is
now in bankruptcy, allegedly as a result of actions of the
defendants.  Paul and Carol Kleinberg, the guarantors on the
loan, were both New Jersey residents at the time the loan was
executed.

        In 1987, Citytrust extended to Kleinberg Electric a $1
million term loan and a $1.25 million line of credit.  Hudson
bought a 63% interest in Kleinberg Electric's term loan as part
of a Loan Participation Agreement.  In 1991, Citytrust failed and
was placed under the control of the Federal Deposit Insurance
Corporation as receiver.  Following standard procedure, the FDIC
sought a buyer for Citytrust and found Chase, which entered into
a Purchase and Assumption Agreement with the FDIC allowing Chase
to evaluate Citytrust's assets and "put" any unwanted assets back

---

[2].  Hudson and its predecessor-in-interest, HUB National Bank,
formerly known as Meadowlands National Bank, are collectively
called "Hudson."  All its employees with knowledge of this matter
reside in New Jersey.

to the receiver. Chase's subsidiary, Consolidated Asset Recovery Corporation ("CARC"), was to manage (with FDIC supervision) any Citytrust assets that were retained or reacquired by the FDIC.

Sometime after Citytrust's bankruptcy in August 1991 and the start of this new arrangement, Hudson ceased receiving payments for its participation interest in the Kleinberg loan. In addition, the Kleinberg line of credit was terminated, apparently upon the closing of the FDIC's Purchase and Assumption Agreement with Chase. Hudson, 832 F. Supp. at 883. Two months later, Chase "put" the Kleinberg loans back to the receiver, to be managed by CARC.

Hudson claimed it had not been notified of Citytrust's bankruptcy and learned of it only in November 1991 when it inquired about the discontinued loan payments. In January 1992 CARC accelerated the loans, allegedly causing Kleinberg to file for bankruptcy. Even after filing for bankruptcy, Kleinberg continued to make payments to CARC on the Citytrust loans, but CARC allegedly failed to remit to Hudson its full share of those payments. By early 1992 it appeared that Hudson was losing money on the Kleinberg loan. In March 1992, however, Chase deposited $476,176.80 into an account of Hudson's at Chase, and Hudson withdrew that money as payment in full of the loan participation. Chase then decided it had deposited the money by mistake and asked for it back. Hudson responded by seeking a declaratory judgment of its rights to the funds, punitive damages, and litigation expenses. Hudson alleged breach of the Loan Participation Agreement, breach of the duty of good faith, breach

of fiduciary duty, and fraudulent concealment. Chase counterclaimed for the return of the money.

After filing its action, Hudson asked the FDIC receiver whether administrative review of its claims was a necessary prerequisite to bringing suit. The FDIC forwarded a claim notice to Hudson, which Hudson filed. The FDIC then disallowed the claim and moved to transfer the case to the District of Connecticut under 28 U.S.C. § 1406(a) (1988)[3] and 12 U.S.C. § 1821(d)(6)(A). The FDIC contended that New Jersey was the wrong venue because 12 U.S.C. § 1821(d)(6)(A) specifies that a claimant can only bring suit in the district where the failed depository institution had its principal place of business or in the District of Columbia. Because Citytrust's principal place of business was in Connecticut, the FDIC asserted that the case should be transferred there. Hudson opposed transfer, contending § 1821(d)(6)(A) only refers to claims against the failed depository institution, not to claims based on actions taken by the FDIC after the bank failed, which are actually against the receiver, not the institution. The district court granted the

---

[3]. Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

FDIC's motion to transfer and then certified the following question for interlocutory appeal:[4]

> Does the venue provision in [FIRREA], 12 U.S.C. § 1821(d)(6) apply to an action which is brought against the receiver for wrongs allegedly committed by the receiver rather than the failed institution?

## II.

We have plenary review over the district court's conclusions of law. Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co., 968 F.2d 357, 359 (3d Cir. 1992); Gregoire v. Centennial Sch. Dist., 907 F.2d 1366, 1370 (3d Cir.), cert. denied, 498 U.S. 899 (1990). We are not limited to the certified question, but may rule on other issues relevant to the appeal.

---

[4]. We must decide whether the district court had jurisdiction to certify the question after it had ordered the transfer. The general rule is that the transferor court loses jurisdiction when the files in a case are physically transferred to the transferee court. See, e.g., Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 250 (4th Cir. 1991); Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516-17 (10th Cir. 1991); Robbins v. Pocket Beverage Co., 779 F.2d 351, 355 (7th Cir. 1985).

In this case, the district court granted the motion to transfer on September 17, 1993. On September 24, 1993, Hudson served notice of a motion to certify the issue to this Court, and on October 12, 1993, the district court granted a stay of the transfer until it decided the motion to certify. Nothing in the record indicates the district court had completed (or even begun) the process of physically transferring the files. We assume the district court delayed physical transfer of the files to allow the parties time to file a motion for certification. Cf. Chrysler Credit, 928 F.2d at 1517 & n.7 (observing this type of delay is the "preferred approach"). The district court had jurisdiction to certify the question we consider here.

<u>Johnson v. Alldredge</u>, 488 F.2d 820, 823 (3d Cir. 1973), <u>cert. denied</u>, 419 U.S. 882 (1974).

The district court granted the motion to transfer venue under FIRREA, 12 U.S.C. § 1821(d)(6)(A). The provision on venue is entitled "Provision for agency review or judicial determination of claims." 12 U.S.C. § 1821(d)(6). Subparagraph (A) provides:

> **In general**
>
> Before the end of the 60-day period beginning on the earlier of--
>> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),[5]
>
> the claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which

---

[5]. Section 1821(d)(5)(A)(i) provides:

> **(5) Procedures for determination of claims**
>
> **(A) Determination period**
>
> **(i) In general**
> Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

12 U.S.C. § 1821(d)(5)(A)(i).

the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A) (footnote supplied).

As we have noted, Hudson contends this subparagraph, with its venue provision, applies only to claims against a depository institution; that is, it applies only to claims against Citytrust and not to claims against the FDIC. If true, the FDIC as receiver cannot request a change of venue under FIRREA. In addition, Hudson maintains the entire subsection (d) is inapplicable to breach of contract actions like the present dispute. Finally, Hudson asserts that under certain circumstances application of the provisions in subsection (d) would create an unconstitutional result.

A.

Hudson maintains that claims against the receiver cannot be considered under § 1821(d)(6)(A),[6] but must be analyzed

[6]. The applicability of the venue provision is the principal issue in this case, so it is helpful to locate the provision within the statute and to describe the scope of the section in which it occurs. Section 1821, entitled "Insurance Funds," covers all aspects of the FDIC's administration of insurance funds. The two subsections at issue are: subsection (d), "Powers and duties of Corporation as conservator or receiver" and subsection (e), "Provisions relating to contracts entered into before appointment of conservator or receiver." 12 U.S.C. § 1821(d), (e).

Subsection (d) relates to the powers and duties of the Corporation ("The Corporation" refers in this context to the FDIC), and is divided into 19 paragraphs. Those at issue are: ¶ (3), "Authority of the receiver to determine claims" (giving the notice requirements for claimants, including timing); ¶ (5), "Procedures for determination of claims" (setting out the period

under § 1821(d)(5)(C) ("Disallowance of claims filed after end of filing period")[7] or under § 1821(d)(6)(B) ("Statute of

(..continued)
during which claims will be decided); ¶ (6), "Provision for agency review or judicial determination of claims" (establishing review procedures, including the venue provision); and ¶ (13) "Additional rights and duties" (including a jurisdictional limitation on judicial review). 12 U.S.C. § 1821(d)(3), (5), (6), (13). Subsection (e) deals with contracts made before appointment of the receiver. Hudson discusses one of the 13 paragraphs in § 1821(e), ¶ (2), "Timing of repudiation." Subsection (e), unlike (d), sets out no specific review procedures for claimants to follow. 12 U.S.C. § 1821(e).

[7]. Section 1821(d)(5)(C) provides:

**(5) Procedures for determination of claims**

. . . .

**(C) Disallowance of claims filed after end of filing period**

**(i) In general**
Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

**(ii) Certain exceptions**
Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if--
(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
(II) such claim is filed in time to permit payment of such claim.

12 U.S.C. § 1821(d)(5)(C).

Limitations").[8]     Hudson  points  out  that  §  1821(d)(13)(D)[9]

---

[8].  Section 1821(d)(6)(B) provides:

**(6) Provision for agency review or judicial determination of claims**

. . . .

**(B) Statute of limitations**
If any claimant fails to--
(i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or
(ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),

before the end of the 60-day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

Id. § 1821(d)(6)(B).

[9].  Section 1821(d)(13)(D) provides:

**(13) Additional rights and duties**

. . . .

**(D) Limitation on judicial review**
Except as otherwise provided in this subsection, no court shall have jurisdiction over--
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets

specifically provides for claims against the receiver while §
1821(d)(6)(A), which contains the venue provision, does not.
From this Hudson concludes that the venue provision (§
1821(d)(6)(A)) if read literally applies only to claims against
the depository institution, not to claims against the receiver.
The FDIC disagrees, contending Congress intended § 1821(d)(6)(A)
to include claims against the receiver.  The district court
agreed with the FDIC.

        The district court acknowledged that Hudson's argument
had some force if § 1821(d)(6)(A) were read without reference to
the related parts of FIRREA that establish claims procedures.
But the district court rejected Hudson's interpretation because
it found that applying the claims procedures' venue provision to
all claims (including claims against the receiver) was more
consistent with the statutory structure and the purposes of
FIRREA.  Following the approach we employed in Rosa v. Resolution
Trust Corp., 938 F.2d 383 (3d Cir.), cert. denied, 112 S. Ct. 582
(1991),[10] the district court looked to the other sections of

(..continued)
                    which the Corporation may acquire from
                    itself as such receiver; or
                         (ii) any claim relating to any act
                    or omission of such institution or the
                    Corporation as receiver.

Id. § 1821(d)(13)(D).

[10]. Hudson reminds us that in Rosa we construed § 1821(d)(13)(D)
of FIRREA literally, holding that it did not apply to entities
unless they were explicitly included. Rosa, 938 F.2d at 393-94.
In Rosa, we held 12 U.S.C. § 1821(d)(13)(D) parts (i) and (ii)
applied only to the claims specified.  See supra note 9 for the
text of this subparagraph.  Thus, with respect to this two-part
subsection, we held (i) applied only to claims against failed

FIRREA that detail the claims process for guidance in understanding the scope of the venue provision.[11]

(..continued)
institutions while (ii) applied to claims against failed institutions specified in (i) as well as to claims against the receiver of such institutions. Rosa, 938 F.2d at 393-94.

Hudson argues that application of Rosa's literal approach to § 1821(d)(6)(A) is proper and leads to the conclusion that § 1821(d)(6)(A) excludes claims against receivers since they are not mentioned. But § 1821(d)(13)(D), which we interpreted in Rosa, differs from the one under consideration in that it comprises two parts, one of which addresses claims relating to the institution and the other which pertains to claims relating to either the depository institution or the receiver.

This structure made us confident in Rosa that the failure to mention claims against the receiver in the first part was not just careless drafting. Where Congress took care in part (ii) to include claims relating to the receiver as well as the depository institution, we could assume that Congress intended in part (i) to include only claims against the institution and to exclude those against the receiver. Section 1821(d)(6)(A), however, contains no analogous divisions, and thus the import of the language is not as clear as it was for us in Rosa. Hudson's argument that we should read § 1821(d)(6)(A) literally, as we did § 1821(d)(13)(D), fails because of the difference in structure of the two subparagraphs.

[11]. The district court properly followed the "cardinal rule that a statute is to be read as a whole, . . . since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., 112 S. Ct. 570, 574 (1991) (citation omitted). As the Supreme Court has stated: "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law . . . ." United Sav. Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 371 (1988) (citations omitted); see also Smith v. United States, 113 S. Ct. 2050, 2056-57 (1993) (construing scope of statutory language by reading various provisions together); Trathen v. United States, 198 F.2d 757, 760 (3d Cir. 1952) (observing "[t]he meaning of any given word in a statute is properly determined by reading the language in question together with other sections of the act").

The district court first considered § 1821(d)(5)(A),[12] which outlines the claims procedures of FIRREA. See Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 62-63 (3d Cir. 1991) (reviewing FIRREA's administrative claims procedures). Noting that the venue provision (§ 1821(d)(6)(A)) defines the claims to which it applies by express reference to § 1821(d)(5)(A), the district court concluded that § 1821(d)(5)(A) and § 1821(d)(6)(A) applied to the same claims. Both subparagraphs apply by their terms to "any claim against a depository institution" for which the FDIC is the receiver.

Having linked § 1821(d)(6)(A) to § 1821(d)(5)(A), the district court then considered whether claims against the receiver were covered under § 1821(d)(5), because if so, § 1821(d)(6)(A) would have to cover them as well. The district court first observed that we have routinely assumed that § 1821(d)(5) applies to claims against the receiver. See Rosa, 938 F.2d at 395-96; Althouse v. Resolution Trust Corp., 969 F.2d 1544, 1545-46 (3d Cir. 1992); Praxis Properties, 947 F.2d at 62-64. The district court then looked to § 1821(d)(13)(D) to explain why claims against the receiver had to be within the scope of § 1821(d)(5) and therefore within the scope of § 1821(d)(6)(A).

---

[12]. The relevant part of 12 U.S.C. § 1821(d)(5)(A) appears supra note 5.

Section 1821(d)(13)(D)[13] bars judicial review except as otherwise provided in § 1821(d). The jurisdictional bar of § 1821(d)(13)(D) extends explicitly to claims against the receiver as well as to those against the depository institution. Thus, unless § 1821(d)(5) allows administrative review of claims against the receiver, there would be no mechanism to review those claims--they would be barred from judicial review by § 1821(d)(13)(D) and there would be no provision for review elsewhere. The district court reasoned that if the paragraphs on administrative and judicial review of claims (§ 1821(d)(6)(A) and § 1821(d)(5)(A)) did not apply to claims against the receiver, then § 1821(d)(13)(D) would compel a complete bar of review of claims against the receiver because no grant of jurisdiction exists elsewhere in § 1821(d). As the district court reasoned: "Logic dictates that the claims barred by paragraph (13)(D) must coincide with those that may be filed under the administrative procedures of paragraph (5). Otherwise, paragraphs (5) and (13)(D) would bar relief in the district court without providing relief elsewhere, and FIRREA would become a source of immunity for the Receiver." Hudson United Bank v. Chase Manhattan Bank, NA, 832 F. Supp. 881, 886 (D.N.J. 1993). The district court found that Congress did not intend FIRREA's claims process to immunize the receiver, but rather wanted to require exhaustion of

---

[13]. For the text of § 1821(d)(13)(D), see supra note 9.

the receivership claims process before going to court.[14] Id. at 885-86.

On appeal, Hudson tries to answer this argument by finding implicit jurisdiction for claims against the receiver in § 1821(d)(5)(C) and (d)(6)(B) which refer to "any claims."[15] But neither section addresses claims against the receiver explicitly, and Hudson's attempt to find a grant of jurisdiction in them is strained.[16] We find the district court's reading of § 1821(d)

_____

[14]. As this is a matter of statutory construction, consideration of legislative history would be appropriate. But neither party has cited material relevant to this venue dispute, and our own research has failed to uncover any.

[15]. For the text of these paragraphs, see supra notes 7 and 8, respectively.

[16]. Hudson also claims Congress intended to exclude claims against the receiver from the ambit of § 1821(d)(6)(A) by establishing two different procedures for processing claims, one for claims against the failed institutions (treated in § 1821(d)(6)(A) and (d)(5)(A)) and another for claims against the receiver (treated in § 1821(d)(6)(B) and (d)(5)(C)), but without making that distinction explicit in the statute.

A look at the titles of the various parts of the statute supports the district court's view that Congress intended to establish a single set of procedures in § 1821(d). See, e.g., INS v. National Ctr. for Immigrants' Rights, Inc., 112 S. Ct. 551, 556 (1991) (noting title of statute or section can aid interpretation of statute's meaning); House v. Commissioner, 453 F.2d 982, 987 (5th Cir. 1972) (observing the propriety of using section headings to determine a statute's meaning). The general title of § 1821(d)(6) is "Provision for agency review or judicial determination of claims," and the title of § 1821(d)(6)(A), which contains the venue provision, is "In general." This leads to the natural inference that procedures contained in the "In general" part apply to all cases of agency review or judicial determination of claims absent explicit exceptions. 12 U.S.C. § 1821(d)(6)(A).

No such inference suggests a separate set of procedures in either § 1821(d)(6)(B) entitled "Statute of limitations" or §

more convincing and consistent with congressional purpose as well as with our opinion in Rosa.

It is true that FIRREA is awkwardly written and difficult to interpret.[17]  But as the district court noted, the purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs with claims against failed depository institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court.  H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 291, 418-19 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 214-15.  The purpose was not to immunize certain claims from review.  The district court also found application of the venue provision to claims against the receiver consistent with the claims process's purpose of promoting efficiency.  Treating claims against the receiver differently from claims against the institution would foster inefficiency by forcing the FDIC to "defend actions at various locations throughout the country, with the attendant disruption of the Bank's records and personnel, [and] the defendant's task would become further complicated." Hudson, 832 F. Supp. at 887 (citation omitted).

(..continued)
1821(d)(5)(C) "Disallowance of claims filed after end of filing period."  Further, there is no mention there of separate procedures for claims against the receiver.  We do not believe Congress intended to establish separate procedures in such an indirect and disjointed manner.  12 U.S.C. § 1821(d)(6)(B), (d)(5)(C).

[17].  As one court lamented when faced with the task of interpreting § 1821(d): "FIRREA's text comprises an almost impenetrable thicket . . . .  [C]onfusion over its proper interpretation is not only unsurprising--it is inevitable." Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992).

Accordingly, we hold that the venue provision in 12 U.S.C. § 1821(d)(6)(A) applies to claims against the receiver. This holding answers the question we expressly left open in National Union Fire Insurance Co. v. City Savings, F.S.B., 28 F.3d 376, 387 n.12 (3d Cir. 1994), as to the reach of § 1821(d)(13)(D).  By deciding that the administrative claims procedures and the jurisdictional bar have concurrent scope, we avoid the possibility raised in National Union that § 1821(d)(13)(D) could become "an independent and outright bar of jurisdiction" rather than a mere exhaustion requirement if § 1821(d)(13)(D) were to have broader reach than the administrative claims procedures.  National Union, 28 F.3d at 387 n.12.

B.

Hudson's second statutory construction argument is that because this action involves the receiver's repudiation of a contract, it falls within § 1821(e) rather than § 1821(d).  We will consider this issue even though Hudson did not present it to the district court.  Merican, Inc. v. Caterpillar Tractor Co., 713 F.2d 958, 962 n.7 (3d Cir. 1983), cert. denied, 465 U.S. 1024 (1984) (on interlocutory appeal, court can consider all grounds which might require reversal).

In arguing this point in its brief, Hudson relied almost entirely on Heno v. FDIC, 996 F.2d 429 (1st Cir. 1993) ("Heno I"), withdrawn and superseded by 20 F.3d 1204 (1994) ("Heno II").  By the time of oral argument, the Court of Appeals for the First Circuit had withdrawn Heno I and replaced it with

Heno II.  At oral argument, counsel for Hudson announced that it still wished to rely on the reasoning of Heno I.

Heno had an executory contract with a bank that failed. Although it had notice of the FDIC's appointment as receiver before the expiration of the time for filing claims under § 1821(d), it had no claim until after the bar date because the FDIC had not yet repudiated the contract and so it remained executory.  Therefore, Heno had no claim to file and no claim subject to administrative review.  Absent prior administrative review, the court lacked jurisdiction to hear Heno's claim.  12 U.S.C. § 1821(d)(13)(D).  Heno had sent the FDIC two post-bar date letters requesting that the FDIC inform Heno of its position on the contract.  Under § 1821(d), however, the letters could not provide the court with jurisdiction because Heno had not filed a claim before the bar date.  In Heno I, the court of appeals reasoned Congress did not intend the administrative review procedures established under § 1821(d) to apply to preclude judicial review of post-receivership claims arising after the 90-day filing period.  12 U.S.C. § 1821(d)(3)(B).  Instead, the "reasonable period" time bar of 12 U.S.C. § 1821(e)(2)[18] would

_____

[18].  Section 1821(e)(2) provides:

> **(e) Provisions relating to contracts entered into before appointment of conservator or receiver**
>
> . . . .
>
> **(2) Timing of repudiation**
> The conservator or receiver . . . shall determine whether or not to exercise the

govern Heno's claim.  Heno II, 20 F.3d at 1208 (discussing Heno I).

The court of appeals withdrew Heno I after realizing that Heno's claim was in fact not barred under § 1821(d) once the FDIC's internal agency manual procedures for processing such post-bar date claims were properly applied.  The FDIC, in its petition for rehearing and then at reargument, represented that if it had considered Heno's claims as contract repudiation claims, Heno's letters would have been sufficient under its internal procedures to avoid the time bar.  Id.  This implied that the FDIC would allow administrative review and thereby remove the bar to judicial review.  Under those circumstances, the court did not find it necessary to treat Heno's contract claim against the receiver under § 1821(e) and went on to consider the parties' arguments under § 1821(d).  Id.  The internal agency manual procedures persuaded the court of appeals that resort to the application of § 1821(e) in breach of contract actions against the receiver was not routinely necessary to avoid an irrational result.  See id. at 1210-14 (setting forth the internal manual procedures in an appendix to the opinion).

In the present case, § 1821(d) will not apply to bar judicial review because of untimely filing for administrative review.  Hudson's claim has already been subjected to

(..continued)
> rights of repudiation under this subsection within a reasonable period following . . . appointment.

12 U.S.C. § 1821(e)(2).

administrative review and the district court had jurisdiction over it.  Nevertheless, Hudson argues that § 1821(d) is generally inappropriate for breach of contract actions, relying on the reasoning of Heno I.  Insofar as the rationale of Heno I depended on the agency's refusal to review Heno's claim, Hudson's argument must fail as no such agency refusal occurred here.  If Hudson's argument is based on the notion that Heno I made the more general statement that contract claims against the receiver are not subject to administrative review, it is inconsistent with Heno II and also with our opinion in Rosa, in which we held that all claims for monetary relief arising out of the receiver's alleged breach of a contract were subject to the administrative review procedures of § 1821(d).  Rosa, 938 F.2d at 392-93.  Furthermore, we find unconvincing the other case on which Hudson relies, Homeland Stores, Inc. v. Resolution Trust Corp., 17 F.3d 1269, 1275 (10th Cir.), cert. denied, 115 S. Ct. 317 (1994), which explicitly differs from Rosa on this point.

C.

Finally, Hudson contends the application of the time constraints imposed by 12 U.S.C. § 1821(d)(6)(A), combined with the time bar contained in § 1821(d)(3)(B) (which sets the cut-off date for claims submitted to administrative review), could in some cases raise significant constitutional problems of improper delegation of authority, denial of due process, and taking under the Fifth Amendment.  Hudson maintains this could result where the receiver causes injury to a party, giving rise to a cause of action after the date has passed by which creditors were to bring

their claims under 12 U.S.C. § 1821(d)(3)(B).[19]  The receiver, which has discretion to hear some late claims under 12 U.S.C. § 1821(d)(5)(C), could exercise its discretion against hearing the claim.[20]  This failure to go through the administrative review

---

[19].  Section 1821(d)(3)(B) provides:

> **(3) Authority of receiver to determine claims**
>
>  . . . .
>
>     **(B)  Notice requirements**
>      The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall--
>          (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after publication of such notice; and
>          (ii) republish such notice approximately 1 month and 2 months, respectively after the publication under clause (i).

Because the receiver must publish notice "promptly," the bar date will fall approximately 6 months after it is appointed.  Claims filed after the bar date are disallowed, with certain exceptions, under § 1821(d)(5)(C).

[20].  The text of § 1821(d)(5)(C) appears supra note 7.  In fact, the discretion of the receiver to hear late claims is limited, and would not apply to many of the post-closing claims against the receiver that Hudson describes.  Claims that are filed late where the claimant had timely notice of the appointment of the receiver but the claim did not arise before the end of the cut-off date would not qualify as exceptions under § 1821(d)(5)(C)(ii).  That was the case in Heno v. FDIC, 20 F.3d 1204, 1207-08 (1st Cir. 1994), in which the complainant concededly had actual notice of the FDIC's appointment but held no claim to assert until after the cut-off date.

procedure would in turn create a bar to judicial review under §
1821(d)(13)(D).[21]  Rosa v. Resolution Trust Corp., 938 F.2d 383,
391-92 (3d Cir.), cert. denied, 112 S. Ct. 582 (1991).  A
plaintiff whose claim the receiver had declined to review as
untimely would therefore be left with no remedy for the alleged
wrong.

We recently recognized that due process might be
violated where a party that had no reasonable opportunity to
submit a claim for administrative review had its claim barred
from judicial review.  National Union Fire Ins. Co. v. City Sav.,
F.S.B., 28 F.3d 376, 389-90 n.16 (3d Cir. 1994).  Hudson argues
that to prevent the possibility of this unconstitutional result
each claim arising from the acts or omissions of the receiver
must proceed not under 12 U.S.C. § 1821 (d)(6)(A), but instead
under § 1821(d)(5)(C), which treats disallowance of claims filed
after the end of the filing period.  The time constraint in §
1821(d)(6)(A) for filing for administrative review of claims
against the receiver would then not apply to the claims, nor
would the venue provision.  Hudson would also have us read the
permissive language of § 1821(d)(5)(C)[22] as mandatory.  See FDIC
v. diStefano, 839 F. Supp. 110, 118 (D.R.I. 1993) (reading the
"may" in § 1821(d)(5)(C) as "must"); Scott v. Resolution Trust
Corp. (In re Scott), 157 B.R. 297, 318 (Bankr. W.D. Tex. 1993)

---

[21].  For the text of this subparagraph, see supra note 9.

[22].  That language is "and such claim may be considered by the
receiver."  12 U.S.C. § 1821(d)(5)(C).

(same), withdrawn, 162 B.R. 1004 (Bankr. W.D. Tex. 1994).  This, Hudson states, would relieve the due process concerns raised by the FDIC having discretion not to hear certain claims, which, if exercised, could operate to bar jurisdiction in the courts.

Hudson reads the due process requirements too broadly. We did not suggest in National Union or elsewhere that due process mandates two separate claims procedures.  Rather, we stated that where the jurisdictional bar contained in § 1821(d)(13)(D) could not constitutionally be applied, a court would have jurisdiction over the claim.  National Union, 28 F.3d at 389-90 n.16, 393 n.22.  Where the statute does not otherwise direct or suggest the recognition of two separate claims procedures, we decline to apply the jurisdictional bar where it would yield an unconstitutional result.  A single claims procedure is more consistent with our decision in Rosa, which held that claims against the receiver, as well as claims against the failed institution, were subject to the "statutory exhaustion requirement" of administrative review before the courts had jurisdiction over them.  938 F.2d at 392-93.  Thus, it would appear there is no constitutional infirmity.  But we need not decide that here.  The possibility of a jurisdictional bar does not arise under the facts of this case because the administrative review process was completed.


                              III.

For the reasons set forth, the judgment of the district court will be affirmed.